## RIVES vs. PARMLEY.

1. At common law, the protest of a notary public is not evidence of notice of the dishonor of a bill, although it should contain an averment that such notice was given. It is by virtue of the statute alone, (Clay's Dig. 280 § 9,) that it is admissible for that purpose.
2. The proper construction of the statute, making the protest of a notary public—when it certifies that legal notice of the dishonor of a bill has been given, "personally or through the post office," to any of the parties entitled to such notice—evidence of the fact or facts it purports to contain, is that all notices, unless given through the post office, are to be deemed personal, whether handed to the party himself who is entitled to it, or left, in a proper manner, at his residence or place of business.
3. To charge the drawer or endorser of a bill by notice left at his place of business or residence, it should be delivered to a clerk, if there be one, at the former place, or to some proper person at the latter, if any such be there.
4. If notice of the dishonor of a bill be left at the place of business or residence of the drawer or endorser, it should be shown that it was left in such manner, and under such circumstances, as are sufficient to charge him.
5. In an action against the drawer or endorser of a bill, the onus of showing due diligence is on the plaintiff, and is a pre-requisite to his right of recovery. If the proof, therefore, be too uncertain to enable the court to see that due diligence has been used, he must fail in his action.

ERROR to the Circuit Court of Mobile. Tried before the
Hon. John Bragg.

ASSUMPSIT by the defendant against the plaintiff in error as
the drawer of a bill of exchange. The only evidence of notice
to the drawer was that contained in the protest, which is in the
following words: " notice of protest left at the boarding house of
P. R. Rives, and at the office of L. Parmley—each this day."
The court charged the jury that this evidence was sufficient to
charge the drawer, which charge was excepted to and is the error
now assigned.

WM. G. JONES, for the plaintiff in error:

1. It is insisted that the evidence of notice of non-payment is
not sufficient. By the general law, the notary's certificate of
notice in his protest is not evidence of notice. How far does
our statute make it evidence of notice? In order to make the
notarial protest evidence of notice under the statute, it must set
forth that notice was given personally, or through the post office.
The protest in this case does not state either of these things, and
it is only when one of these two things is stated in the protest,
that it is made evidence of notice by the statute. The proper
construction of the statute is, that it makes the protest evidence
only of such statements in it as are refered to in the statute, and
of no other statements which it may contain. If this construc-
tion be not adopted, then the notary might certify that he gave
notice to A. B., executor of the drawer, and it would be evi-
dence that A. B. was executor, or that he sent notice to A. B.
by mail to X., the post office of the drawer, and it would be ev-
idence that X. was the drawer's post office. The construction
I contend for has been acted on practically, and is sanctioned by
this court in the case of O'Connell v. Walker, 1 Por. 263, in
which it was held that a notary's certificate that he gave notice
" to H., the agent of C.," was no evidence that H. was agent
of C. See also, The Planters & Merchants Bank v. King, Up-
son & Co., 9 Ala. 279. If the construction of the statute con-
tended for be correct, the court erred in refusing the first and
second charges asked, and also erred in the charge given.

2. But even if the certificate of the notary were admissible as
evidence of notice, and be also considered as evidence that Rives
had a boarding house in Mobile, yet it does not show a suffi-

cient notice even then. The leaving the notice at the boarding house could only be good, on the supposition that Rives resided in Mobile. The general rule is that where the parties reside in the same town personal notice must be given to the drawer, in order to charge him. The authorities are very decided and uniform to this effect.—Story on Bills, 336, § 300; Foster v. McDonald, 3 Ala. 34; Stephenson v. Primrose, 8 Por. 155. All the cases show that where the party to be charged by notice lives in the same city with the party seeking to charge him, a proper effort must be made to give actual personal notice. It is only when the party on enquiry cannot be found at his usual place of business, or his usual place of residence, that it is sufficient to leave a notice in writing for him at his residence, or place of business, and even then it must be left with a proper person. Here, it does not appear that any enquiry was made for Rives, or that the notice was left with a proper person, or indeed with any person at his boarding house. For aught that appears, the notary, when he called at the supposed boarding house of Rives, may not have enquired for Rives at all, or he may have seen Rives and not given him the notice, but given it to a servant or stranger, or even dropped it in the passage, or some private room of the House. He does not even state that the notice left at Rives' supposed boarding house was directed to Rives, or left there for Rives, or any request made that it should be communicated to Rives. No case has ever held such a notice sufficient. On this ground then, the court erred in the charge given.

3. The drawer or endorser is entitled to strict notice of dishonor. This is a condition precedent, and must be strictly proved.—Smedes v. Utica Bank, 20 Johns. 282-3; Musson et al. v. Lake, 4 How. S. C. Rep., 274.

HAMILTON, for the defendant.

1. The statement of the notice of non-payment is sufficient. Notice left either at the residence, or place of business of an endorser, is all that is required.—Story on Prom. Notes, 282; 8 Por. 155; Primrose v. Stephenson, 3 Ala. 34.

2. A notice left at a boarding house, is a compliance with the requirement.—See 1 McL. 92; 6 Pet. 250; 1 Espinasse, 4; Story on Prom. Notes, 364, § 313.

It is submitted that the certificate of the notary is fully sus-

tained by the case of Bank, &c., v. Curry, 8 Por. 360, where similar questions arose in the notary's certificate and protest.

DARGAN, C. J.—This was an action by the defendant against the plaintiff in error, as drawer of a bill of exchange. The only evidence introduced to prove notice of the non-payment of the bill was the certificate of the notary, contained in his notarial protest, which is in the following language: "Notice of protest left at the boarding house of P. R. Rives, and at the office of L. Parmley, each the same day." It is contended: first, that this certificate is inadmissible as evidence; secondly, if it be admissible under our statute, it does not show such diligence as entitles the plaintiff to recover.

At common law, it is very clear that the protest of a notary is not evidence of notice of the dishonor of a bill, although it might contain an averment that notice was given. It is by our statute alone that such evidence is admissible, the language of which is as follows—" that the protest of a notary public, which shall set forth a demand, refusal, non-acceptance, or non-payment of any inland bill of exchange, or other protestable security, for money or other thing, and that legal notice, expressing in said notice the time when given, of such fact or facts, was personally or through the post office given to any of the parties entitled by law to notice, shall be evidence of the facts it purports to contain." The construction we feel bound to give this statute is this, that the notice in all cases is to be deemed personal, unless it be given through the post office, and although it be not handed to the party himself by the notary, but is left with some one at his place of business, or at his residence, with whom it would be proper to leave notice, (the party himself not being present to receive it,) still it would be personal notice within the meaning of the act. This is the construction that has been, practically at least, put upon the statute; for ever since the passage of the act it has been the custom of notaries in this State, to certify in their protests that notice had been given to the parties entitled by law to notice, and these protests have been invariably received by our courts as evidence, although the facts certified showed that the notice was not handed to the party himself, sought to be charged; and although objections have been made to the sufficiency of such proof, it has never been objected, so far as we

can discover, that the certificate of the notary was inadmissible, because it showed that the notice was not handed to the party himself, but was left at his place of business, or at his residence. In the case of Curry v. The Bank of Mobile, 8 Por. 360, the notary certified that he had left the notice at the office of the endorser. It was objected that the notary should have described the place where it was left, and then it should have been proved *aliunde* to have been the office, or place of business of the defendant. This objection was overruled. It is true that the precise point was not raised in that case, nor was it decided by the court; yet I think it shows the construction that has been given to this statute, and as no inconvenience can result from adhering to it, I am not disposed to depart from it. But it is contended that the case of O'Connell v. Walker, 3 Port., is a decision opposed to this view. In that case no notice was pretended to have been given, but the notary certified the excuse or reason why it had not been, which was, that the notary went to the counting-house of Wm. R. Hallett, the agent of O'Connell, but found no one there to receive notice. Now it is very clear that this certificate was not legal evidence, for the reason that the protest is made evidence of notice only, when it is shown that notice has been given, and is not evidence, when it shows only an excuse for failing to give notice. But the court did place their judgment on the ground that the certificate of the notary could not be received to prove the agency of Hallet, and we should probably adhere to this case, if the question should arise hereafter, whether the certificate of the notary was evidence of the agency of one on whom the notice was served, when it did not appear that an effort was made to give the party himself notice. But we cannot consider this decision as an authority in the case before us. Here the certificate shows that notice in fact was given to the drawer by leaving it at his boarding house, and I think it better to adhere to the practice that has been established under this act, and to hold that notice left in a proper manner, either at the place of business, or at the residence of the party, is personal notice within the meaning of the act, although such notice be left with a clerk or servant, to be delivered to the endorser or party intended to be charged.

Admitting that the protest is admissible evidence, does it show such diligence as the law requires to charge a drawer or

Rives v. Parmley.

endorser of a bill? Notice of the dishonor of a bill need not be served on the drawer or endorser personally, even when he resides in the same town where the bill is payable, but it is sufficient if it be delivered to some suitable person at his place of business, or at his residence.—Story on Bills, § 300; Chitty on Bills, 502-3, (8th ed.;) Bailey on Bills, 277. Judge Kent says, "that the notice will be sufficient in all cases, if left at the residence of the party in a way reasonably calculated to bring the knowledge of it home to him, and if the house be shut up for a temporary absence, still the notice may be left there."—3 Kent's Com. 107. If the house was shut up and no person there, it is then certain that leaving notice at the house would be sufficient, for it is perhaps the next best thing that could be done. But I think the authorities very fully show that if there be no person at the place of business, or the residence of the party, with whom the notice could be properly left, then it is unnecessary to leave the notice at all, and the effort of the party to give the notice by going to the endorser's place of business, or his residence, will entitle the holder to recover.—Story on Bills, § 300; Chitty on Bills, 502-3; Williams v. The Bank of the United States, 2 Pet. 96. But I have found no case which holds that if there be a clerk at the place of business of the party sought to be charged, or some person at his residence, with whom it would be proper to leave notice, the notice need not be left with such clerk or person. On the contrary, all the authorities agree that in such cases the notice should be left with the clerk at his place of business, or person at his residence.—Chitty on Bills, § 502-3, and cases cited in note; Story on Bills, § 300; Stephenson v. Primrose, 8 Por. 155.

Testing the language of this certificate by these rules, I am compelled to say that it does not afford evidence of such diligence as the law requires to charge a drawer or endorser. The circumstances under which the notice was left are not shown. It does not appear whether the drawer was at home when the notary called, nor whether any inquiry was made for him, nor whether the notice was handed to any person to be delivered to him, nor whether any person was at the house or not. This evidence is too uncertain to charge the defendant, for consistently with the language of this protest, the notice might have been left at the boarding house of the defendant in a manner

Rives v. Parmley.

wholly insufficient to charge him. Indeed, the notice might have been left at the house on the day stated, and yet the notary might have been guilty of gross neglect; as if he had merely stopped at the house and left the notice without inquiry for the defendant, or saying a word about the object of his visit, or delivering the notice to any one to be handed to the defendant, when he could have delivered it to the party himself by enquiring for him. But it is urged that we should presume the notice was left at the house in a proper manner and under circumstances that would constitute due diligence. We can indulge in no presumption, neither that there was due diligence used, nor that the notary was guilty of neglect. We can only examine whether the evidence is of such a character as to authorise us to say that due diligence was used, and if it be not of that character, then we cannot hold the plaintiff entitled to recover, for the onus is upon him to prove diligence, as a pre-requisite to his right to recover, and if the evidence be too uncertain to enable the court to see that due diligence has been used, then the condition precedent to the plaintiff's right of recovery is not shown to have been performed. In the case of Lawson v. Sherwood, 1 Starkie 314, the witness proved that notice was served on the party two or three days after the dishonor of the bill. Notice on the second day would have been good under the circumstances of that case, but notice on the third would not. Lord Ellenborough said to the plaintiff, "it lies on you to show that notice was given in due time, and I cannot go upon probable evidence without proof of the fact," and on this evidence he non-suited the plaintiff. In the case at bar, the notice might have been left at the boarding house of the defendant under circumstances that would have charged him, or under circumstances that would not, and the burthen of the proof is on the plaintiff. I therefore must say that he has not offered such proof as will show that he has used due diligence. The judgment must be reversed and the cause remanded.