# Martin, Dumee & Co. *v.* Brown, Shipley & Co.

*Action on Foreign Bill of Exchange, by Indorsee against Drawer and Payee.*

1. *Recoupment of damages; statutory provisions.*—The act approved January 25th, 1879, entitled "An act to provide the mode of procedure in cases in which the claim of recoupment of damages is interposed" (Pamph. Acts 1878-9, p. 154), does not add to or enlarge the class or number of claims or demands which may be the subject of recoupment, but only authorizes a judgment for the defendant for any excess of damages over and above the plaintiff's claim, as under the plea of set-off.

2. *Same; what demands may be recouped.*—In an action *ex contractu,* the defendant can not claim a recoupment of damages on account of defamatory words, written or spoken, published of him by the plaintiff, though they may relate to the contract sued on, its subject-matter, or breach.

3. *Protest of bill of exchange; contents and sufficiency of notary's certificate.*—A statement in the notary's certificate of protest, of the names of the parties to whom notice of protest was sent by him, is made by statute competent evidence of the facts stated (Code, § 1336); but such statement is not an essential part of the protest, and the fact of notice may be proved otherwise.

4. *Secondary evidence of writings beyond jurisdiction of court.*—When original letters or documents are in a foreign country, beyond the jurisdiction of the court, secondary evidence of their contents is admissible, although the witness has the original in his possession.

5. *Proof of agency; acts and declarations of agent.*—The general rule is, that the fact of agency must be proved, before the acts, declarations or admissions of the agent can be received as evidence against the principal; but, where the fact of the agency rests in parol, or is to be inferred from the conduct of the principal, if there is any evidence tending to show the agency, the acts or declarations of the agent are admissible as evidence, and the jury must determine the question of agency *vel non.*

6. *Relevancy of evidence as to price and quality of cotton shipped to Liverpool, in action between parties to bill of exchange drawn against shipment, and protested for non-acceptance.*—In an action by the indorsee and purchaser, against the drawer and payee of a foreign bill of exchange, which was drawn against a consignment of cotton shipped from Mobile to Liverpool, and was protested for non-acceptance, evidence as to the quality of the cotton is irrelevant and inadmissible, in the absence of evidence showing that it was sold by plaintiffs in Liverpool as of a quality inferior to that at which it was purchased in Mobile; and if the plaintiffs can be held liable, in such action, for any loss resulting to defendant from their unreasonable delay in selling the cotton in Liverpool after the protest of the bill for non-acceptance, some evidence of such delay and consequent loss must be adduced, before evidence as to the market price

VOL. LXXV.

[Martin, Dumee & Co. v. Brown, Shipley & Co.]

of cotton in Liverpool when the cotton arrived there is relevant and admissible.

7. *Notice of dishonor of bill.*—Notice of the dishonor of a bill of exchange, foreign or domestic, though generally given in writing, may be given verbally.

8. *Abstract charge.*—A charge requested, which is based, in whole or in part, on a state of facts, of which there does not appear to have been any evidence whatever, is abstract, and is properly refused for that reason.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by Brown, Shipley & Co., partners doing business in Liverpool, England, against Martin, Dumee & Co., a partnership engaged in the business of buying and selling cotton in Mobile, Alabama; and was founded on a foreign bill of exchange for £6,729, 15s., 9d., which was drawn by the defendants, dated Mobile, October 2, 1880, payable sixty days after sight, to their own order, in London, and addressed to W. D. Coddington & Sons, Blackburn, England, who were therein directed to " charge the same to account of 502 bales of cotton *per* steamer *Juana.*" The bill of exchange was drawn against the shipment of cotton, which was bought by defendants on account of Coddington & Co., on an order received by telegram from one Vernon, defendants' agent at Blackburn, England; and the bill of exchange was sold and negotiated to plaintiffs, through one W. F. Halsey, their agent at New Orleans, the bills of lading being attached as collateral security, and a letter sent by defendants to plaintiffs at the same time, in these words :

" NEW ORLEANS, Octo. 2d, 1880.

" Messrs. Brown, Shipley & Co. (Liverpool) : We have this day sold to W. F. Halsey our bill on Messrs. W. D. Coddington & Sons, dated this day, for £6,729, 15s., 9d., sterling, against a shipment of 502 bales of cotton per steamer *Juana*, for Liverpool, as *per* bill of lading to order herewith ; with the understanding, that the bills of lading are lodged as collateral security for the acceptance, and, if in your discretion you deem it advisable, for the payment of said bill, with liberty to surrender the bills of lading against a broker's engagement ; and you are authorized, in case you think necessary, to place the said 502 bales of cotton at any time in the hands of your brokers for sale at your discretion, and to charge all expenses, including commissions for sale and guarantee, and to apply the proceeds in or towards payment of the bill, for account of 'whom it may concern' ." (Signed by said defendants.)

The bill was presented by plaintiffs, on the 22d October, to said Coddington & Sons for acceptance; but they refused to accept it, on the ground that the bill was drawn at the rate of

7d. per pound for the cotton, while they had only agreed to pay 6d.; and the bill was thereupon protested for non-acceptance. The cotton did not arrive in Liverpool until the 8th November, and was then placed in a warehouse by plaintiffs; and having been sampled by their brokers, it was sold in lots, according to classification, on the 18th, 20th, 23d and 25th November, the net proceeds of sale amounting to £5,829, 8s., 7d., which was applied by plaintiffs on the bill of exchange.

The pleadings in the case cover thirty pages of the transcript, but the points decided by this court render it unnecessary to state them at length. The complaint contained several counts on the bill of exchange, and the common money counts. The defendants pleaded the general issue to the common counts, and several special pleas to the counts on the bill. Several of the special pleas sought to recoup damages alleged to have been sustained by defendants by reason of certain telegrams sent by plaintiffs, by cable, to different persons in New Orleans, the substance of which was, that defendants had drawn on Coddington & Sons for more than they were authorized to draw; and the pleas alleged that these telegrams were libelous and slanderous, were maliciously published by plaintiffs of and concerning the defendants in their business as cotton merchants, and had greatly injured them in their said business; and offered to set off these damages against the demand claimed by plaintiffs in their complaint. The court sustained demurrers to each of these special pleas. The defendants pleaded, also, that they had not been duly notified of the dishonor of the bill, and that they had sustained damages, which they offered to set off, by the plaintiffs' negligence and delay in selling the cotton; and these were the principal issues finally submitted to the jury.

On the trial, as appears from the bill of exceptions, the plaintiffs gave in evidence the bill of exchange, and also the notary's certificate of protest, which was in the usual form, and which was offered "to prove that said bill had been protested." The defendants objected to the admission of the certificate as evidence, "because the same does not show that notice of said protest was sent to these defendants"; and they duly excepted to the overruling of their objection. The plaintiffs afterwards proved by one Hoffman, "who was the confidential clerk of said W. T. Halsey, plaintiffs' agent in New Orleans," that on the 26th October, 1880, he received a telegram from Brown Brothers & Co., plaintiffs' New York firm, stating that defendants' said draft had been protested for non-acceptance; and that on the next day, October 27th, "for said Halsey, and also representing plaintiffs, he gave verbal notice to E. S. Dumee, one of defendants said firm, that said bill of exchange on Coddington & Sons had been protested for non-acceptance the day

before, and that the holders looked to said defendants for payment." The defendants objected to this testimony, " so far as tending to show verbal notice to said Dumee of dishonor and protest, and moved to exclude the same, because verbal notice was insufficient ; " and they duly excepted to the overruling of their objection and motion.

The plaintiffs read in evidence the deposition of said W. D. Coddington, taken in Blackburn, England, who testified as to his purchase of the cotton from Vernon, as defendants' agent, the terms of the sale, and the reason for the refusal of his firm to accept the draft ; and among other things deposed thus : "In September, 1880, I arranged with Mr. F. W. B. Vernon to purchase from the firm of Martin, Dumee & Co., of Mobile, for whom he represented to me that he was authorized to act as agent, five hundred bales of cotton, low-middling Orleans, good staple, equal to sample which he then produced to me, and which, when we agreed upon terms, was sealed up and handed over to my firm. I produce the original 'sale-note,' signed by said Vernon, and attach a copy of it to this deposition, marked and initialed by me for identification ; but I decline to part with the original, as I may hereafter require it." The "sale-note," as shown by the copy here set out, was dated at Blackburn, September 28, 1880, signed by said Vernon, with the word "agent" added to his name, and addressed to said W. D. Coddington & Sons, and was in these words : " I have received a cable message from Messrs. Martin, Dumee & Co., saying that they accept your offer of 6d. per pound for 500 bales of low-middling, canebrake cotton, as per sample, cost, freight, insurance, and six per cent. loss in weight, for prompt shipment per steamer from New Orleans ; of which the advice will be given," etc. "The defendants objected to the introduction of said copy as evidence, because the witness admitted possession of the original, which was the best evidence, and should have been produced ; and also because it had not been shown that Vernon was defendants' agent to write said letter, and the original message from them to said Vernon, received by him, is the only evidence admissible against them." The court overruled each of these objections, and admitted the evidence, and exceptions were duly reserved by the defendants. The bill of exceptions recites, in this connection, that there " was other evidence, also, tending to show said Vernon's agency for defendants, as appears herein ; " and it further shows several other exceptions reserved by defendants, on the same ground, to other letters mentioned by said witness, copies of which were annexed to his deposition, though he had the originals in his possession.

The defendants propounded to several of the plaintiffs' witnesses, whose depositions were taken in Liverpool, this cross-

interrogatory : " Was the market for cotton rising or falling at the time Coddington & Sons refused to accept said bill. " Each of the witnesses answered : " It was falling." This evidence was excluded by the court, on objections by plaintiffs to both question and answer ; and the defendants excepted. The defendants introduced as a witness one W. H. Martin, a member of their firm, " and offered to prove by him the 'Liverpool General Brokers' Association Prices-Current,' for cotton, on Friday, October 22d, 1880, showing that low-middling Orleans was quoted on that day at 6 11-16*d.*, middling Orleans at 7 1-16*d.*, and good-middling at 7 3-8*d.*" The court excluded this evidence, on plaintiffs' objection, " as irrelevant and immaterial ;" and the defendants excepted. The defendants also offered to prove, by the same witness, " the price in Liverpool, on 22d October, 1880, of the grades of cotton shipped by the steamer *Juana ;*" also, " whether the cotton in question was worth, on the 22d October, 1880, more or less than the face of the bill, and how much ;" and " that the value of the cotton, on that day, exceeded the amount of the draft £124, 8*s.*, 2*d.*" Each portion of this evidence, as offered, was excluded by the court, as being irrelevant and immaterial ; and exceptions were duly reserved by the defendants to these several rulings.

The sustaining of the demurrers to the defendants' special pleas of recoupment, with other rulings on the pleadings adverse to them, the several rulings on evidence to which exceptions were reserved, as above stated, and the refusal of several charges asked by the defendants (which the opinion of this court renders it unnecessary to set out), are now assigned as error.

F. G. BROMBERG, for appellants.

P. & T. HAMILTON, *contra.*

BRICKELL, C. J.—We can not concur in the argument of the counsel for the appellants, that the act of the General Assembly, approved January 25th, 1879, entitled " An act to provide the mode of procedure in cases in which the claim of recoupment of damages is interposed." (Pamphlet Acts, 1878–79,p. 154), adds to or enlarges the character of claims or demands which form proper matter of recoupment. Certainly, the act does not admit of a construction which will authorize the defendant, in an action *ex contractu,* to interpose a claim for damages, because of a libel published, or of slander spoken by the plaintiff concerning him, though the libel or slander may relate to the contract, or to its subject-

[Martin, Dumee & Co. v. Brown, Shipley & Co.]

matter, or breach.   A statute which would work a change so radical in settled laws, introduce into a suit such a multiplicity and diversity of issues, perplexing and confusing to juries, ought to be clearly and unambiguously expressed.   When the act is compared, as it must be, with the prior state of the law, the only change it introduces is, that if the damages the defendant has the right to recoup, are found to exceed the amount of the plaintiff's demand, he shall be entitled to a judgment for the excess; assimilating the procedure upon a plea of recoupment to that which has long prevailed by statute on the kindred plea of set-off.—*Hatchett v. Gibson*, 13 Ala. 587; *Batterman v. Pierce*, 3 Hill (N. Y.), 171.   The pleas of recoupment were of matters wholly foreign, and incapable of being introduced into the suit.   The circuit court, *ex mero motu*, could have properly ordered them stricken from the file.—*Johnson v. McLaughlin*, 9 Ala. 551.

A notarial protest of a bill of exchange for non-acceptance, or for non-payment, usually states the name and place of residence of the notary; that he was duly qualified; the time, manner, and place that he made demand of the acceptance, or of the payment of the bill; describing or identifying, usually by reference to a copy written upon the reverse of the certificate, the names of the parties of whom the demand was made, the refusal, and the name of the party at whose request acceptance or payment was demanded.   It is not unusual now to embody in the protest a statement of the parties notified, or to embody such statement in a separate certificate.   But it is only by statute the statement is evidence of the fact of notice. At common law, it was not accepted as evidence of that fact; " and it is not an essential part of the protest, for notice may be proved otherwise, though the statute makes the certificate of the notary competent evidence of it."—*Rives v. Parmley*, 18 Ala. 256.   There was no error in the admission of the notarial protest.

The originals of the several letters, copies of which were produced and proved, were in a foreign country, without the jurisdiction of the court; and secondary evidence of their contents, though it had been verbal, was admissible.—1 Whart. Ev. § 130.

The general rule is, that the fact of agency must be shown before the acts, or the declarations, or admissions of the agent will be received as evidence against the principal.   But, if the fact of agency rests in parol, or is to be inferred from the conduct of the principal, and there be evidence tending to show the agency, the acts or declarations of the agent are admissible in evidence, and the jury must determine the fact of agency *vel non.*—*Gimon v. Terrell*, 38 Ala. 208; *McClung v. Spots-*

*wood*, 19 Ala. 165; *Bank of Montgomery v. Plannett*, 37 Ala. 222. The bill of exceptions expressly recites, that there was evidence tending to show that Vernon was the agent of the appellants.

The evidence in reference to the state of the cotton market in Liverpool, when the cotton arrived there, or as to the quality of the cotton, or its value in Mobile at the time of its purchase, seems to us wholly irrelevant. It may be conceded that the appellees were bound to the exercise of reasonable diligence in making sales of the cotton, after its arrival in Liverpool, and there was a refusal by the drawees to accept the bill; and if there had been unreasonable delay or negligence, that they would have been liable for any loss resulting to the appellants. But there was a want of evidence tending to show such delay or negligence, and in its absence all inquiry as to the state of the market was irrelevant; as was all evidence as to the quality of the cotton, unless there had been evidence that it was sold by the plaintiffs as of a different or inferior quality. While the court should with care guard against the exclusion of evidence, however slight or weak it may seem, which has a tendency to establish any material fact, it should with equal care guard against the introduction of evidence which is irrelevant—which does not directly tend to the proof or disproof of a material fact.—*State v. Wisdom*, 8 Port. 511; *Governor v. Campbell*, 17 Ala. 566.

Notice of the dishonor of a bill of exchange, foreign or domestic, may be given in writing, or may be given verbally. The form of notice is not material; all that is necessary is, that within a reasonable time after dishonor, the party liable and intended to be charged should be apprised of the dishonor, and that he is looked to for payment.—Byles on Bills, 412. True, as is often said in the books, it is more prudent to give the notice in writing, because thereby the evidence of it will be the better preserved, in the event the fact becomes matter of dispute. But this is far from saying that notice in writing is indispensable.—Wade on Law of Notice, § 831. There was no error in the admission of evidence that verbal notice of the dishonor of the bill was given to the defendants.

The rule of practice has long been settled, that a charge requested, though it may state a correct legal proposition, is properly refused, if it is based, in part, or in the whole, upon a state of facts of which there does not appear to have been evidence. Such a charge is abstract. It is not necessary to consider separately the several instructions requested by the appellants. Such as could in any event be regarded as stating correct legal propositions, are obnoxious to this objection.

We find no error in the record, and the judgment must be affirmed.