# Gibson *v.* Snow Hardware Co.

*Action on Common Counts, for Goods Sold and Delivered.*

1. *Relevancy of evidence as to sale and use of building materials.*—In an action on an account for building materials sold and delivered by plaintiff for use in the construction of a house which defendant was building, the correctness of the account being disputed, the plaintiff can not be allowed to prove the size of the house and the quantity and value of the materials necessary for its construction.

2. *Proof of agency; declaration of agent.*—The fact of agency can not be proved by the declarations of the person assuming to act as agent, standing alone; but his declarations are admissible as evidence of the fact in connection with proof of the principal's knowledge and recognition of his acts as binding on himself, and sufficient to authorize the jury to find the existence of the agency, and to hold the principal liable for the acts of the agent within the scope of his authority.

3. *Same.*—There being evidence before the jury tending to make out a *prima facie* case of agency, though denied by the defendant, it is competent for the plaintiff to prove all the acts and declarations of the supposed agent, including his declaration that he was defendant's general agent in and about the particular matter in controversy.

4. *Proof of sale and charge on books.*—Where plaintiffs sue on an account for building materials sold and delivered to defendant on the order of a person who assumed to act as her agent, and she denies the fact of agency and the correctness of the account, it is competent for the plaintiff, having adduced evidence of the agency, to prove that they sold the materials on the defendant's credit, in accordance with the agent's orders, and charged them to her on their books.

5. *Sub-agency; delivery of goods to servant or employe.*—If the building materials were sold by plaintiffs on defendant's credit, and charged to her on their books, pursuant to the instructions of her agent to let the contractor have such materials as he wanted at her expense, the fact that some of the materials were delivered to the servants and employés of the contractor, and not to him personally, does not involve any question as to his right to appoint a sub-agent, but the defendant's liability for such materials is precisely the same as for the materials delivered to the contractor in person.

6. *Relevancy of evidence as to payment to third person.*—When plaintiffs sue for the price of building materials sold by them on defendant's credit, pursuant to the orders of her agent, for use in the construction of a building, the correctness of the account and the fact of agency being controverted, defendant can not be allowed to prove that she paid the contractor for the materials used.

7. *General agency; authority of agent.*—When the evidence shows that the defendant's son was the architect of the building which she was erecting, superintended its construction, made changes in the plan and specifications, and gave orders for materials to be charged to her, and that she had knowledge of these facts; this is sufficient to show that he was her general agent in all matters relating to the

[Gibson v. Snow Hardware Co.]

building, and a person who furnished, on his orders, materials to be used in its construction, was not bound to inquire into the exact extent of his authority.

8. *Estoppel against principal denying authority of agent*—A person who, by his conduct, has induced a third person to believe that one assuming to act as his agent was authorized so to act, is estopped to deny such authority.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. SAM. H. SPROTT.

This action was brought by the J. Snow Hardware Company, a private corporation, against Mrs. F. L. Brady Gibson, and was commenced on the 18th March, 1889. The complaint contained three counts—on account, on account stated, and for goods and chattels sold and delivered—each claiming $750. The only plea was the general issue. The plaintiff's account, as offered in evidence on the trial, specified the various articles sold and delivered, with date of delivery between December 6, 1888, and March 3, 1889, aggregating $1,225, with credits amounting to $683.54. The articles sold consisted of hardware materials for use in building, and were used, as plaintiff contended, in the construction of the opera-house in the city of Tuskaloosa, which Mrs. Gibson was then building. John Brady, a son of Mrs. Gibson, was the architect, who furnished the plans and specifications, and supervised the work; and one G. W. Allen was the contractor. The plaintiff's account stated the name of the person who sold the several articles, and the name of the person to whom they were delivered; and showed that most of the articles were delivered to said Allen, and the balance to McLester and others, who were in his employment, and at work on the house. Several witnesses for the plaintiff, members of the corporation, testified that said Brady had always acted as agent for his mother in business dealings with them, told them that he was her general agent in all matters relating to the construction of the opera-house, and instructed them to let Allen have what materials he wanted for use in its erection, charging them to Mrs. Gibson. The defendant, testifying in her own behalf, denied that Brady was her general agent, or was ever authorized by her to buy things from plaintiff and have them charged to her; and she denied her liability for articles procured by Allen and his employés without an order from her, claiming that she had paid him for all articles furnished by him; but the evidence as to this payment was excluded by the court, against her objection and exception. Brady also testified, as a witness for defendant, that he had never represented to plaintiff, or any body in plaintiff's employment, that he was Mrs. Gibson's general agent in all matters connected with the construction of the

[Gibson v. Snow Hardware Co.]

opera-house, that he had never told any of them to let Allen have whatever he wanted for use on the house and charge the articles to his mother; and he denied that he ever acted as his mother's agent, except in a few specified instances. Several exceptions were reserved by the defendant to the rulings of the court on evidence in reference to these matters, but it is unnecessary to state them at length.

On request of the plaintiff, the court gave the following charges to the jury: (1.) "It is not true that one who deals with a general agent is bound to know the extent of his authority; but, if the plaintiff shows that John Brady was Mrs. Gibson's general agent in building the opera-house, they would have a right to deal with him, in regard to matters connected with the opera-house, without inquiring the exact extent of his authority." (2.) "When one suffers another, without objection, to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound thereby, although no previous authority exists. If he has justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, he is estopped from denying it."

The defendant excepted to these charges, and also to the refusal of each of the following charges, which were asked by her in writing: (1.) "If the jury believe the evidence, they will find for the defendant." (2.) "The evidence in this case is not sufficient to establish the general agency of John Brady for the defendant." (3.) "There is no evidence in this case that John Brady was the general agent of Mrs. Gibson." (4.) "If the jury believe the evidence, Mrs. Gibson, the defendant, can not be made to pay for the goods ordered by G. W. Allen from the plaintiff."

The several rulings on evidence, the charges given, and the refusal of the charges asked, are assigned as error.

Tipton Bradford, and Foster & Oliver, for appellant.

Foster & Jones, contra.

McCLELLAN, J.—This action is prosecuted by the J. Snow Hardware Company against Mrs. Gibson, for the price or value of materials alleged to have been supplied to her, to be used, and which were used, in the construction of an opera-house in the city of Tuskaloosa. Several witnesses testified that the items of the account were all used in the erection of the house, while one witness for the defendant, John Brady, who was the architect and superintended the erection, deposed that "the

account [sued on] is not correct, as there are several over-charges and charges for material that never went into the construction of the opera-house," &c., &c., going on to specify certain material and articles charged on the account which were not received for or used in the building. We have nothing to do with the weight of the evidence on the respective sides of this issue. Suffice it for us that there was some evidence upon either hand, thus making the question one for the jury. Going to this issue, the plaintiff was allowed to prove the size of the house, the value or amount of material necessary to its construction, and the value of the labor put upon it, against defendant's objection. This evidence would probably tend to induce the mind of a layman to the conclusion that all the material charged for was supplied, since that amount of material, or even more, was needed in the building. Hence we can not affirm that, if the ruling of the court was erroneous, it involved no injury to the defendant. That it was erroneous is, we think, clear. We are unable to see how the fact that more material than plaintiff claims to have sold could have been used in the construction of the opera-house, can have any legitimate tendency to prove that all the material charged for and specified in the account sued on was in truth sold and delivered to the defendant, and used in the building. This would be to prove a sale by evidence of the vendee's necessities, or his ability to utilize the thing alleged to have been sold. The testimony ought to have been excluded.

2. The inquiry of final importance in the case appears to be, whether, in legal contemplation, John Brady was the agent of the defendant, in the purchase of the materials which went into the building of the opera-house. There is no direct evidence that he was, since his own declaration to that effect can not, standing alone, be looked to. But the evidence on the part of the plaintiff goes to show that they had been selling goods to Brady for his mother, Mrs. Gibson, "ever since they had been in business, and that she had always paid for goods so sold." It was in evidence, also, that Brady had prepared the plans and specifications for the opera-house; that he was superintending its erection, seeing that the plans were executed and the specifications complied with, and in some instances changing the same; and that he was constantly at the building, supervising the work, &c. It also appeared, upon one aspect of the testimony, that at the commencement of the building, before indeed the work had been begun, he directed the plaintiff to let Allen, the contractor, have whatever was needed in the erection of the opera-house, and told the company's officers that his mother would pay for material

[Gibson v. Snow Hardware Co.]

so furnished; and that upon this direction and assurance the company, beginning about Dec. 1, 1888, supplied between that time and March 18, 1889, the goods set out in the account sued on; that all these goods were charged to Mrs. Gibson; that on January 1, 1889, when the account amounted to about $375, a statement of it showing that the credit was given to her, and the charge made against her, was presented to Mrs. Gibson for payment, paid by her without objection, and the statement kept by her and produced on the trial. It further appears from plaintiff's evidence that, on March 4, 1889, Mrs. Gibson had two accounts on its books, one known as the opera-house account, and the other as her individual account, the last being for less than $20; and that on that date she paid plaintiff the sum of $100, with directions to satisfy the individual indebtedness and apply the balance to the payment of the opera-house account. Then, too, it appeared that she was much about the opera-house during the time plaintiff was delivering material there, and had in consequence abundant opportunity to know that the company was supplying such material; and that she received the benefit in the erection of the opera-house. Now these facts—the previous dealings by her with the plaintiff, through Brady as her agent; Brady's connection with the building of the opera-house; her frequent presence there during these transactions; the payments by her on plaintiff's account for the materials furnished, with full knowledge that that account was made out against her, and without, at least in the first and main instance, any objection— were all proper to go to the jury as evidence of the agency of Brady, that the goods and wares so supplied went into the construction of her house, and to her benefit; and unexplained, or unqualified, it can not be doubted they were amply sufficient to authorize the jury to find the existence of the agency, and hold her liable accordingly.—1 Am. & Eng. Ency. of Law, pp. 437–8; *Scott v. Middletown R. R. Co.*, 4 Am. & Eng. R. R. Cases, 114; *Herring v. Skeggs*, 73 Ala. 446; *Bearce v. Bowker*, 115 Mass. 129; *Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.*, 87 Ala. 305; *Central R. R. of Ga. v. Cheatham*, 85 Ala. 292; *Singer Manufacturing Co. v. Belgart*, 84 Ala. 219.

3. All these facts being properly before the jury, it was of course open to the defendant to overcome the evidence tending to establish them, either by evidence in flat contradiction and denial, or by way of explanation and qualification, going to rebut the inferences apparently afforded by the testimony in chief that Brady was her agent. Whether the evidence thus afforded by the defendant in denial of her knowledge that

[Gibson v. Snow Hardware Co.]

plaintiff was furnishing the material and charging it to her, and in denial of Brady's authority to bind her, and in explanation of the payments made by her, so as to deprive her acts in that regard of any probative force in establishing a ratification by her, was sufficient to overcome the case made by the plaintiff, was manifestly a question for the jury. Upon the issue thus presented, the triers of fact were at liberty to reach either of the two possible conclusions—that Brady was, or was not, the agent of Mrs. Gibson in and about the erection of the opera-house and the purchase of material therefor. The jury having before them the evidence upon which it was competent to find the fact of such agency, it was of course not only proper, but essential, that evidence of Brady's direction to plaintiff to supply the material, and assurance that his mother would pay for it, should go to them to be looked to, in the event they found that Brady was her agent, for the purpose of ascertaining, declaring and enforcing the obligation Mrs. Gibson took upon herself through him. Nay more, there being evidence before the jury tending to prove the agency, or to make out a *prima facie* case thereof, it was then competent to prove all the acts and declarations of Brady in and about the business,—and among the rest his declaration that he was defendant's general agent,—and submit it all to the jury.—Mechem on Agency, § 107; *Reynolds v. Collins*, 78 Ala. 94; *Martin, Dumee & Co. v. Brown, Shipley & Co.*, 75 Ala. 442.

4. We conceive of no plausible ground for defendant's objection to the testimony of the officers and employès of the plaintiff corporation, that acting upon the order of Brady, and in strict consonance with it, they sold the material needed in the construction of the opera-house on the credit of Mrs. Gibson, and charged it to her account. If the jury found that Brady was her agent, this was necessary to fix her liability; and if they found that Brady was not her agent, these facts would not tend to impose any obligation upon her.

5. The objection to charges and evidence which proceed on the idea that, assuming Brady's agency, defendant is not liable for goods delivered into the hands of McLester and other employès of Allen at the opera-house, are equally without merit. Brady's order was for the delivery to Allen of such material as should be needed in the erection of the house, on the credit of Mrs. Gibson. This was, of course, on the assumption that Brady was her agent, as if Mrs. Gibson in person had directed the furnishing of such supplies as Allen should need for the purpose in hand, thus lodging the discretion of selection in Allen. Nothing to the contrary

[Gibson v. Snow Hardware Co.]

appearing, it is to be taken that the wares were to be supplied at market prices. The price thus being determined upon, and the selection of articles being made by Allen, his employès were not agents at all—no discretion was lodged in them, no confidence was involved in the service they performed in merely fetching to the opera-house articles selected by their master, and to be charged to Mrs. Gibson at prices before in effect agreed upon. They were mere servants performing manual service; and the goods delivered to them, to be carried to the opera-house, and so carried, stand in no different aspect in this account than had they been carried by Allen's own hand.—Mechem on Agency, § 2.

6. Nor was there error in excluding the testimony of Mrs. Gibson, to the effect that she had paid Allen for the material charged in the account sued on. That fact could exert no inflence on this case, in any aspect. If Brady was her agent, and had authority to bind her to the payment of the account to the J. Snow Hardware Co., palpably payment by her to Allen, or anybody else, would not avoid her liability to plaintiff; and if Brady was not her agent, she would not be liable to plaintiff whether she had paid Allen or not. The inquiry was foreign to the case, and properly eliminated from it.

7. Agencies are of three classes: universal, general, and special. "An universal agent is one authorized to transact all of the business of his principal of every kind. A general agent is one who is employed to transact all of the business of his principal of a particular kind, or in a particular place. A special agent is one authorized to act only in a specific transaction."—Mechem on Agency, § 6; 1 Am. & Eng. Ency. of Law, pp. 348 *et seq.* "A special agency properly exists when there is a delegation of authority to do a special act." Story on Agency, § 17. "A special agent is authorized to do one or two special things."—1 Ross on Cont. 41. "A special agent is appointed only for a particular purpose, and is invested with limited powers."—Chitty on Contr. 285. In the case at bar, there was not only the declaration of Brady, that he was Mrs. Gibson's general agent, but other evidence from which the jury might have inferred that he represented her generally in making purchases, or, at least, that he was her agent for all purposes in respect of the opera-house, including the making of the contract with Allen, the purchasing of material, the supervision of the work, changing of plans and specifications, &c. This would, in our opinion, constitute him her general agent with respect to that enterprise, if the jury found the facts in line with these tendencies of the evidence, having authority to do, not "one or two special

[Thornton v. Highland Avenue & Belt Railroad Co.]

things," not "a single act" merely, but all acts necessary to the consummation of the enterprise in hand. And the court's charge to the jury at plaintiff's instance, that one who deals with a general agent is not bound to inquire as to the extent of his authority with respect to the matter of the agency, and that, "if the plaintiff shows that John Brady was Mrs. Gibson's general agent in building the opera-house, they [it] would have a right to deal with him in regard to matters connected with the opera-house, without inquiring the exact extent of his authority," was pertinent to the evidence adduced, and a correct exposition of the law applicable to it.—*Louisville Coffin Co. v. Stokes*, 78 Ala. 372; Mechem on Agency, §§ 283–287.

8. It is an elementary principle, correctly stated in the second charge given for plaintiff, that one who by his conduct has justified the belief of a third party "that the person assuming to be his agent was authorized to do what was done, is estopped from denying" such authority.—Mechem on Agency, §§ 83, 84.

What we have said will suffice to determine defendant's exceptions to the refusals of the court to give the first, second, and third charges asked by her, against the appellant. The evidence was in conflict on every material point in the case; and hence charge 1 was properly refused. There was evidence that Brady was Mrs. Gibson's *general* agent in respect of the building of the opera-house; and hence charge 3 was bad. Whether this evidence was sufficient to establish the fact, was a question for the jury and not for the court; and therefore charge 2 was properly refused.

For the error committed in allowing evidence of the size, &c., of the opera-house to go to the jury, the judgment must be reversed, and the cause remanded.

Reversed and remanded.