# Thornton *v.* Pinckard, *et al.*

### *Bill to Declare a Deed Absolute a Mortgage, and to Redeem.*

(Decided June 3, 1908. Rehearing denied July 3, 1908.
47 South. 289.)

1. *Mortgages; Conveyance of Equity; Oppressed Mortgagor.*—One who makes a deed absolute to property encumbered by mortgages in consideration of the vendee assuming the mortgage debt cannot set aside the conveyance on the ground of an oppressed mortgagor, unless there was fraud actual or constructive, including an unconscionable advantage, or undue influence or for a grossly inadequate consideration.

2. *Deeds; Consideration; Adequacy.*—The evidence in this case stated and considered and held insufficient to show that the assumption of the mortgage debt was a grossly inadequate consideration for the deed executed so as to authorize a cancellation.

3. *Mortgages; Absolute Deed as Mortgage; Evidence; Presumption.*—While parol evidence is admissible to show that a deed absolute on its face was intended as a mortgage, yet to overcome the presumption that an instrument is what on its face it purports to be, a deed absolute, and to establish its character as a mortgage, the evidence must be clear, unequivocal and convincing; so where an absolute deed is given in payment of a mortgage it must be shown that the grantor as well as the grantee intended it to be a mortgage.

4. *Deeds; Validity; Acceptance; Evidence.*—Where the evidence shows that the husband of the grantor acted as her agent in and about the selling of the property as provided in an agreement made and that the grantee refused to accept the deed until an arrangement had been made with one of the mortgagees, and the wife signed the deed, thereby putting it in the power of the husband as agent to deliver it, a contention that the minds of the parties never met and that the deed was never accepted as tendered is not tenable.

5. *Principal and Agent; Authority; Secret Instructions.*—Secret instructions or communications between the principal and agent as to the conditions upon which a deed should be delivered, cannot affect the purchaser.

6. *Mortgages; Debt; Discharge; Agreement.*—Where an owner of property gave a first and second mortgage thereon, and afterwards executed a deed on the consideration that the grantee in the deed would assume the mortgage debt, an agreement thereafter entered into between the grantee in the deed and the holder of the second mortgage whereby the second mortgagee conveyed to the grantee in the deed his equity of redemption to secure protection against the first mortgagee with an agreement that if the first mortgagee should

[Thornton v. Pinckard, et al.]

foreclose, the interest of the second mortgagee should revest in such mortgagee on certain named conditions and that the debt on the second mortgage should not be affected, the agreement did not discharge the debt of the owner to the second mortgagee.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by Sallie H. Thornton against J. S. Pinckard and others to declare a deed absolute on its face a mortgage and to redeem from it and certain other mortgages. From a decree dismissing the bill, complainant appeals. Affirmed.

GUNTER & GUNTER, for appellant. As against Davidson the bill is one to remove and cancel her mortgage as a cloud and to set aside his judgment on the ground that by relinguishing her mortgage he satisfies her debt.— *Palmer v. Hendrie,* 28 Beav. 341; s. c. 27 Beav. 249; *Walker v. Jones,* 3 Moore's P. C. (N. S.) 414; *Thornton v. Court,* 3 D. G. McN. & G. 293; 2 Jones on Mortgages, sec. 1226. On the necessity of an unconditional acceptance of a deed as tendered attention is called to the following.—*McClure v. Colcough,* 17 Ala. 92; *U. S. Bank v. Dandridge,* 12 Wheat. 90; L. R. 5 Enc. & Irish App. Cases, 1. The deed was a result of a relinquishment of the equity of redemption by an opprossed mortgagor.— *Moeller v. Moore,* 50 N. W. 396; *Bynum v. Hobbs,* 83 S. W. 341; *Vernon v. Nethel,* 2 Eden. 113; *Locke v. Palmer,* 26 Ala. 324; *Huguenin v. Basely,* 14 Ves. Jr., 289.

MARKS & SAYRE, and WILSON & MARTIN, for appellee. In support of the chancellor's rulings in dismising the bill counsel cite the following.—20 A. & E. Ency. of Law, 1013 and cases cited; *Pugh v. Davis,* 96 U. S. 332; *Chapman v. Cowles,* 41 Ala. 104; *Smith v. Smith,* 45 South. 168; *Gibson v. Snow & Co.,* 94 Ala. 346; *Golden v. Merchant,* 43 Ala. 705; *Danforth v. Herbert,* 33 Ala. 497; *Jackson v. Knox,* 119 Ala. 320; *Reeves v. Abercrombie,* 108 Ala. 535.

DENSON, J.—Appellant in 1902 owned certain real estate in Montgomery, and mortgaged the same to Philadelphia Mortgage & Trust Company, to secure a loan of $6,000, with interest at 6 per cent., payabl semi-annually, January 1st and July 1st; $1,000 of the principal being due January 1, 1904, and the balance July 1, 1908. The loan was negotiated by J. S. Pinckard, who acted as agent for the borrower. Appellant was unable to pay the amount falling due January 1, 1904, and executed a deed to J. S. Pinckard, conveying the mortgaged property upon an expressed consideration of $10 and the assumption by Pinckard of the debt to the mortgagee. On January 6, 1903, appellant had made a second mortgage on the same property to N. F. Davidson to secure an indebtedness of $1,510.40, payable in installments; the last falling due May 22, 1903. At the time the deed was taken by Pinckard, there was a written agreement between him and the second mortgagee, reciting the execution of said deed to Pinckard, that both of said mortgages were past due, that the first mortgagee was threatening to foreclose, that said property at foreclosure sale would probably not bring enough to pay the amount of the first mortgage and the expenses of foreclosure, that it was to the interest of both parties to the agreement that the property bring as much as possible, and conveying to Pinckard the equity of redemption held by the second mortgagee, and providing that Pinckard would pay the interest on the first mortgage as it fell due, pay the taxes and insurance, and at any time within two years, if a purchaser could be found, would convey the property to him at a price sufficient to pay the first mortgage, interest, taxes, and insurance, cost of improvements made by Pinckard, and all other lawful charges within the meaning of the statute applicable to redemption of real estate, and that, if anything remained, it

was to be applied to the second mortgage—the balance to be retained by Pinckard. It was provided that if the first mortgagee should foreclose his mortgage the agreement should be void, and the interest of the second mortgagee should revest in her upon the payment by her to Pinckard of any amounts paid out by him in excess of rents received by him, and that in case the property should not be sold within two years all rights of the second mortgagee in the premises should vest in the said Pinckard, but the debt of the appellant to the second mortgagee should not be affected. This agreement was executed April 12, 1904. The deed from appellant to Pinckard was executed March 26, 1904.

Appellant filed her bill in the city court of Montgomery, July 6, 1906, alleging that when she became unable to meet the payments due on the first mortgage she made a proposition to Pinckard, who held the mortgage for collection, that she would make him a deed to the property for the mortgage debt, and turn it over to him, and allow him to collect the rents, and would, as soon as she could, redeem the property, allowing him 8 per cent. on the money; that he accepted the proposition, and the deed was made, with the understanding by both parties that it was intended as security to Pinckard for the amount of the mortgage debt of $6,000, running at 6 per cent., which he was to assume; he to be allowed 8 per cent. interest therefor until the property was redeemed. She alleges that the agreement betwen Pinckard and the second mortgagee was made without her knowledge or consent, and that she first learned of its existence a week before her bill was filed; that its effect in equity was to transfer to said Pinckard the debt she owed said N. F. Davidson, and to entitle her to a redemption of said mortgage by paying to Pinckard the amount he paid in acquiring said equity of redemption; or, if mis-

14 R

taken in this, that said conveyance of the equity of re-
demption, having been made without her knowledge or
consent, is contrary to and in fraud of the power con-
tained in the second mortgage, and ineffectual to extin-
guish the equity of redemption which now rests in either
Pinckard or Davidson, and she is entitled to redeem
from the second mortgage on such terms as the court may
prescribe—to which she offers to submit. She prays that
the deed to Pinckard may be held to be a lien only for
what may be justly due him, and that she be allowed to
redeem from him, and from both mortgages upon the
payment of such amount as is found to be justly due.
J. S. Pinckard and N. F. Davidson are made parties de-
fendant. Both of them answer, denying that the deed to
Pinckard was intended to be given as security, but al-
leging that it was intended by both parties to be an abso-
lute conveyance, and that the agreement between Pinck-
ard and Mrs. Davidson was made with the knowledge
and consent of complainant's husband, who was acting
as her agent. The chancellor, on the pleadings and proof,
rendered a final decree dismissing the bill; and that de-
cree is here assigned as error.

The first insistence of the appellant (complainant be-
low) is that the deed was the result of a relinquishment
of the equity of redemption by an oppressed mortgagor,
without other consideration than the mortgage debt, the
appellant contending that the transaction must be re-
garded in the same light as if Pinckard were the mortga-
gee; and relief is claimed, under this aspect, upon the
general doctrine that courts of equity will scan with
watchfulness purchases of the right of redemption en-
tered into subsequent to the execution of the mortgage,
and will strike them down if procured by fraud, actual
or constructive, including any unconscionable advantage
or undue influence, or on a consideration which is gross-

ly inadequate. Assuming that Pinckard occupies the same position that he would have occupied had he been the mortgagee, and that the same test must be applied to the transaction between him and Thornton that should be resorted to were the mortgagee the grantee in the deed, yet, so far as this contention is concerned, the deed must stand, unless it is satisfactorily shown that it was procured through fraud, including any unconscionable advantage or undue influence, or on a consideration which is grossly inadequate. Such we understand to have been the law in this jurisdiction, by express decision of this court, as far back as the case of *McKinstry v. Conly*, 12 Ala. 678. See, also, *Stoutz v. Rouse*, 84 Ala. 309, 4 South. 170; *Peagler v. Stabler*, 91 Ala. 308, 9 South. 157; *Gorce v. Clements*, 94 Ala. 337, 10 South. 906; 20 Ency. Law, p. 1013.

We have been unable, after reviewing the evidence, to find any which would justify a contention that the conveyance was not voluntary—that it was tainted with fraud or unconscionable advantage taken of the grantor. Indeed, we do not understand appellant's counsel to go to that length, but that their insistence is rested simply upon the theory that the consideration recited and given for the deed was inadequate. In *Stoutz v. Rouse, supra,* it was said by this court, speaking through Somerville, J.: "It is sometimes said that a purchase of the equity of redemption will be sustained only when it is based on an adequate consideration. There is much reason, however, in the rule that, in the absence of fraud, undue influence, or unconscionable advantage, the mortgagor may, at any time after the execution of the mortgage, by a new and separate contract, sell or release his equity of redemption to the mortgagee for a consideration that is not grossly inadequate. This we incline to hold to be the better rule." And in *Wood v. Craft,* 85 Ala. 260, 4

South. 649, a case in equity by a vendor for rescission and cancellation of a conveyance, it was said, by Stone, C. J., for the court: "To justify the setting aside of a conveyance solely on the ground of inadequacy of consideration, it must be very marked—so gross as to strike the understanding with the conviction that the transaction was not fair and bona fide. * * * In *Underhill v. Norwood,* 10 Ves. 211, Lord Eldon said: 'If the terms are so extremely inadequate as to satisfy the conscience of the court that there must have been imposition, or that species of pressure on the party's distress, which, in the view of the court, amounts to oppression, the court will order the instrument to be delivered up.' This is a very accurate statement of the principle."—*Peugh v. Davis,* 96 U. S. 332, 24 L. Ed. 775.

Testimony as to the value of the property, such as that involved in this controversy, is in its nature opinion evidence. 'There is, perhaps, no subject on which witnesses differ more widely." And in this case the witnesses differ in their estimates of the value. Perhaps there is no better test of the real value of real estate than to put it on the market and seek purchasers for it. Property is usually worth what it brings. The agreement between Pinckard and Mrs. Davidson provided that if, at any time within two years, the property could be sold for enough to pay both mortgages, Pinckard should sell it, make deed to the purchaser, and apply the proceeds to the payment of the mortgages. While the complainant was not a party to that agreement, it would have inured to her benefit if the property could have been sold, and therefore Thornton was interested in having it sold. The undisputed testimony shows that for two years, and over, Thornton and Davidson and the real estate agents employed by them were not able to sell the property— were not even able to get an offer on it at $8,000. This

[Thornton v. Pinckard, et al.]

strongly tends to show that there was not such a gross disparity between its real value and the amount assumed and to be paid by Pinckard as to make the consideration grossly inadequate or shock the conscience. And we conclude, upon the whole evidence, that the consideration was not grossly inadequate.—*Wood v. Craft, supra; Adams v. Pilcher,* 92 Ala. 474, 8 South. 757.

The next insistence is that the conveyance to Pinckard, though absolute on its face, was only intended to be the security for the payment of a debt, and was, therefore, a mortgage. Parol evidence may be resorted to for showing that a conveyance absolute on its face is in reality a mortgage; but to overcome the presumption that the instrument is what on its face it purports to be, an absolute conveyance of the land, and to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing. And it must in the instant case show, not only that the complainant intended it should be a mortgage, but that Pinckard also intended it as such.—*Brantly v. West,* 27 Ala. 542, 552; *Reeves v. Abercrombie,* 108 Ala. 537, 19 South. 41; *Adams v. Pilcher, supra.* It is shown without contradiction that the complainant's husband acted as her agent throughout the whole transaction; and we are led to the conclusion, from the evidence, that he was her general agent in respect to the property and its management.—*Gibson v. Snow Hardware Co.,* 94 Ala. 346, 10 South. 304. There is no competent evidence in the record, save his, of a positive nature, tending to show that the deed was intended as a mortgage. On the other hand, the testimony of Pinckard is clear and positive that the deed was intended by both parties as an absolute conveyance, and that there was no agreement that it should operate as a mortgage or lien. This is corroborated by the testimony of the witnesses, W. B. Davidson and Thorington, who tes-

tified to conversations with J. F. Thornton (the husband) about the deed, in none of which was any claim made that the deed was to operate as a mortgage. The agreement between Pinckard and Davidson, made at the solicitation of the complainant's agent, supports the view that the deed was intended to be what it purported to be—an absolute conveyance. Under that agreement, if Davidson should find a purchaser, the balance of the proceeds of the sale, after making certain payments, was to be retained by Pinckard, and not to be repaid to Thornton.

It is further contended that the minds of the parties to the deed never met—that Pinckard never accepted it as tendered, and, therefore, that it is inoperative, and should be removed as a cloud on appellant's title. In view of the facts that appellant's husband acted as her agent throughout the transaction, that Pinckard declined to accept the deed until the arrangement was made concerning the second mortgage, and that the contract in respect to this second mortgage was made at the instance and request of appellant's husband and for the purpose of inducing Pinckard to accept the deed, this contention cannot stand. Furthermore (in support of this conclusion), Mrs. Thornton, by signing the deed and putting it in the power of her agent to deliver it, thereby invested him with authority to deliver it upon the terms expressed in the deed. Secret instructions or communications between principal and agent, as to the conditions upon which a deed shall be delivered, cannot affect the purchaser.—*Montgomery, etc., Co. v. Hardaway*, 104 Ala. 100, 16 South. 29. Thornton agreed to the arrangement between Pinckard and Davidson. The testimony without conflict shows this. And he tried to sell the property for Davidson under this agreement.

[Thornton v. Pinckard, et al.]

In respect to the contention that the Davidson debt has been discharged by the agreement made between Pinckard and Davidson, we do not perceive that the case of *Palmer v. Hendrix*, 27 Beavan, 349, is in point. We think the facts differentiate the two cases, and leave the principle enunciated in that case without application here.

We have discovered no error in the record, and the decree of the chancellor must be affirmed.

Affirmed.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.