# Penn & Montgomery *v.* Smith, *et al.*

*Action for Damages Against Buyer for Refusal to Accept Goods Sold him.*

1 *Goods sold by sample; implied warranty that bulk equals in quality the sample.*—On a sale of goods by sample there is an implied warranty by the seller that the bulk of the commodity sold is equal in quality to the sample exhibited; and if they do not correspond, the buyer may refuse to receive the goods.

2. *Right of re-sale by the vendor.*—If, after sale by sample, the bulk corresponds with the sample, and the purchaser refuses to receive the goods bought, the vendor may re-sell them at the risk of the buyer, the damage being the difference between the contract price, and the price obtained on re-sale. Notice of such re-sale should be given to the buyer.

3. *Same.*—At such re-sale the vendor acts as the agent of the buyer, and in selling, he must act in good faith, and must conduct the sale in such manner as will be best calculated to bring the fair value of the property sold.

4. *Burden of proof.*—Where goods are sold by sample, and shipped to the buyer, who refuses to accept them on the ground that they do not correspond with the sample, in a suit by the vendor for damages, the burden is on the plaintiff to show that the goods corresponded with the sample. Where the contract is executed, by the acceptance of the goods by the purchaser, in a suit for the price, the defense being that the goods did not correspond with the sample, the burden is on the defendant to show that fact.

APPEAL from Lee Circuit Court.

Tried before the Hon. J. M. CARMICHAEL.

The plaintiffs, Smith, Grainger & Cantrell of Gallatin, Tenn., sued the defendants, Penn & Montgomery, merchants doing business at Opelika, Ala., for damages for refusing to accept, and pay for a shipment of flour forwarded by plaintiffs from their warehouse in Nashville, to defendants at Opelika, which had been sold to the defendants by an agent of the plaintiffs, by sample. Upon the arrival of the flour in Opelika the defendants, upon examination, refused to accept it, upon the ground that it did not correspond with the sample exhibited to them by the agent of the shippers; that it was not the flour they had bought. See facts of this case reported in 93 Ala. 476. The defendants filed

[Penn & Montgomery v. Smith, et al.]

a number of pleas to the complaint on this trial, among which were the following: 3. "The defendants say that they contracted to buy of plaintiffs four hundred and fifty barrels of flour which were not then at hand, and which plaintiffs at the time had no opportunity to inspect, but which they were subsequently to ship to defendants. That by said contract the plaintiffs agreed that said flour, so to be delivered, would be as good as two certain lots of flour then in possession of defendants, and which, by samples thereof, were then shown to plaintiffs, a part, to-wit, one hundred and fifty barrels, to be of one grade, and to-wit, three hundred barrels of another grade; that plaintiffs did afterwards ship defendants a lot of four hundred and fifty barrels, but said flour was of an inferior quality to that agreed to be delivered, and defendants rejected the same, and gave notice of such rejection, and plaintiffs thereupon took possession of said flour and sold it." Amended plea 2. "Defendants say that the only merchandise agreed to be purchased by them from plaintiffs was a lot of flour; that said flour was sold to them by sample, and was subsequently to be shipped to them by plaintiffs. Defendants aver that a lot of of flour was shipped to them by plaintiffs, which defendants, on inspection thereof found did not come up to said samples, and notified the defendants thereof. That plaintiffs thereupon took possession of said flour and sold it."

Amended plea, 5. "Defendants say plaintiffs agreed to sell and deliver to them at Opelika, Alabama, four hundred and fifty barrels of flour, a part of one grade, and the balance of another grade; that four hundred and fifty barrels of flour were subsequently shipped to them, which they aver, on inspection, did not come up to the grade agreed to be delivered, and they notified plaintiffs thereof, and thereupon plaintiffs took said flour so shipped, and sold the same to other parties; and that said flour was never accepted by defendants." To each of these pleas the plaintiffs demurred, but the court overruled the demurrers. During the examination of the witness, Erwin, in behalf of the plaintiffs, he was asked: "Which way did you advise Mr. Smith to dispose of the flour?" Defendants objected to this question. The court overruled the objection, and the defendants excepted. The witness then stated that he had advised Mr. Smith that, "the best way to realize cash price and sell promptly, was to sell as a whole." Defendants moved to exclude the answer, and the court refused to grant the motion, and the defendants duly excepted.

Among the written charges asked by the plaintiffs, were: 2. "The burden is on the defendants to make good their plea that the flour was not up to samples exhibited by Smith, and the jury can look to the whole evidence in the case in determining whether the defendants have reasonably relieved themselves of that burden."

13. "Whatever the defendants set up in defense of plaintiffs' action, the burden is upon them to prove." These charges were given by the court, and the defendants excepted separately thereto.

The defendants asked the following written charges: 1. "In re-selling, the plaintiffs ought to have re-sold in car-load lots." 2. "If the sale in this case was by sample, and if the jury find from the evidence that the samples by which the flour was sold were compared with the flour in the store of Penn & Co., and were the same as that flour, and if they find the flour shipped to be not equal to the flour in that store with which the samples have been compared, then the plaintiffs cannot recover." 3. "If the jury find from the evidence that in Opelika the offer of 450 barrels of flour in one lot would not realize reasonably as good a price as offering it in car-load lots, then in this case the plaintiffs did not exercise reasonable diligence in the re-sale." 4. The burden of proof is on the plaintiffs, and before they can recover in this case, they must satisfy the jury by evidence that the flour came up to the samples by which it was sold." 5. "Even if the jury should believe that the flour came up to the samples agreed on, it was the duty of Mr. Smith to sell the flour in car-load lots, of 150 barrels, and if he did not do so, that he did not exercise reasonable diligence in the re-sale. 6. "The burden of proof is on the plaintiffs, and if the jury find from the evidence that the flour was sold by samples, before the plaintiffs can recover in this case, they must satisfy the jury by evidence, that the flour came up to the samples by which it was sold." The court refused to give each and all of said charges, and the defendants excepted separately to such refusal—and here assign said action of the court as error.

W. J. SAMFORD & J. M. CHILTON, for appellants.—1. The court erred in not permitting the witness, Smith, to answer whether the flour could not have been sold to better advantage in a larger market.—*Lewis v. Grider*, 51 N. Y., 231-236; 2 Benj. on Sales, p. 1023—Note.   2. The court erred in refusing charge 6, requested by defendants.—*Merriman v. Chapman*, 32 Conn., 146.   3. The court erred in giving charge

13 for the plaintiffs. The defendants set up that the sale was by sample, and the flour was not accepted, but the burden of showing that the flour did not come up to the sample, was not on the defendants.—32 Conn., *supra*.

A. & R. B. BARNES, and G. P. HARRISON, for appellees.—1. That it was not the duty of the plaintiffs to seek other markets in which to re-sell the flour. 2. Evidence was clearly relevant, that Erwin advised Smith as to the best means of disposing of the flour. It tended to show *good faith* in Smith, the plaintiff, in making the re-sale. 3. It is a primary rule of evidence that whatever a defendant pleads in defense, or answer to plaintiff's complaint, the *onus* is on him to prove. Saunders on Pl. & Ev. 489; 3 Brick. Dig., p. 33. 4. The modern American decisions recognize the right of a purchaser to rescind an executory contract for the purchase of goods, and refuse to accept them for a breach of warranty of quality, but that does not change the rule of pleading and evidence, that if he claims the right to rescind, he must prove it.—Benj. on Sales, Vol. 2., Rev. Ed. 879; *Brigham v. Reteldorf*, 73 Iowa, 712. 5. The Code of Alabama requires the defense set up in this case to have been specially pleaded. Code, § 2675, and authorities cited.

HARALSON, J.—The Circuit Court did not err in overruling the demurrer to plea No. 3, and to pleas Nos. 2 and 5 as amended. They each tendered an answer to the complaint.

The plaintiffs (appellees here) sued for the breach of an alleged contract, by which the defendants (appellants here), on the 15th of April, 1889, agreed to accept and pay for a large lot of flour in barrels, at a stipulated price, if delivered by the plaintiffs to the defendants at Opelika, Alabama, within a reasonable time thereafter; and they aver that they complied with the contract on their part, and the defendants failed to comply with the provisions of said contract, to receive and pay for said flour, at the prices agreed on, and plaintiffs were damaged. The damage claimed is the loss on a re-sale of the flour by plaintiffs, to the extent of the difference in the price obtained on a re-sale and the contract price of the flour. The common counts for money due, and for goods and merchandize sold, are added.

The evidence tended to show the following facts: that the flour was sold by samples; that on its arrival in Opelika, the defendants declined to accept it; that they sent a telegram to plaintiffs, at their home—"Flour not up to grade

we bought, and we reject same," signed, "Penn & Co.;" that afterwards defendants wrote to plaintiffs to the same effect; that the telegram and letter were received, and one of the firm of plaintiffs, Mr. Smith, came at once to Opelika. An effort was made by him to adjust the matter, but it failed; whereupon he gave notice to defendants, that unless they made immediate settlement his firm would proceed to re-sell the flour at their risk, and would hold them responsible for any loss sustained. The defendants replied to this notice, that they had given their reply to the telegram. There was also evidence tending to show that the flour did, and that it did not, come up to the samples by which it was sold, and that the flour market from 1st May, for some weeks, had an upward and a downward tendency; that on May 5th, the day said notice was served on defendants by plaintiffs, said Smith invited several merchants to make sealed bids for the flour, having tried before that to get oral bids for it and failed; that sealed bids were made that night to him by two merchants for the entire lot, and he sold it at a loss of 50 cents per barrel, which was under the market price; but the evidence tended to further show this was a fair price for the lot; and other evidence was introduced tending to show that if the flour had been offered in car-load lots, it could have been sold for 10 or 15 cents under the market price at any time, but there was no evidence to show that Smith knew or was informed of this fact, nor was there any evidence of the value of such flour in any other market, nor does it appear that defendants made any request, or gave any instructions or advice as to how, or when or where the re-sale should be made. Said Smith testified, and it is uncontradicted, that he sought information as to what merchants in town bought flour in car-load lots, and asked the advice of one Erwin, a broker, as to how to sell the flour, who advised him that the best way to realize the cash, and sell same promptly, was to sell it as a whole.

It is a familiar principle that when goods are sold by sample there is an implied warranty by the seller, that the bulk of the commodity is equal in quality to the sample exhibited to the buyer; and if they do not correspond the purchaser may refuse to receive it.—*Magee v. Billingsley*, 3 Ala. 679. If they do correspond, and the purchaser refuses, notwithstanding, to accept the goods, the vendor may re-sell them at the risk of the purchaser, the damage being the difference between the price at which sold at first and the price obtained on re-sale.—2 Benj. on Sales, § 1022, n. Before the vendor proceeds to a re-sale he should manifest

[Penn & Montgomery v. Smith, et al.]

his intention to do so by a preliminary notice to the vendee that he intends to re-sell, and will hold him liable by the price obtained.—2 Benj. 1023, n.

In making such re-sale, the vendor acts as the agent of the buyer in default. His right and duty are so well stated in *Brownlee v. Bolton*, 44 Mich. 218, we quote what the court say as correct and applicable to this case: "It is sufficient to say, generally, that the vendor's right of re-sale must be exercised in good faith, and in such time, and in such manner, and under such circumstances, and by such methods, as will be best calculated to produce the fair value of the property; and in case he seeks to avail himself of it before a jury, it is incumbent on him to adduce the necessary facts to show that, in exercising this right, this manner was observed."—2 Benj., p. 1022.

The re-sale may be made at public auction, or privately, and it often happens that the goods can be best sold at private sale; but, whether in the one mode or the other, in the absence of any instructions from the buyer, the vendor has the right to exercise his discretion within reasonable bounds; and whether this discretion is exercised properly and in good faith, are questions of fact for the jury.—*Lewis v. Grider*, 51 N. Y. 231.

The vendors had the right to sell in Opelika, the place where the goods were to be delivered; and if they acted in good faith in making the re-sale in that place, and obtained the best price they could for the whole lot, this discharged their duty in this respect. If the buyers, after a notice to them by the vendors of their purpose to re-sell, desired them to sell in one mode or another, or at a different place from Opelika, they should have communicated their desires or instructions to the vendors; but, in the absence of such instructions, they can hardly be heard to complain at the sale, unless they can show it was unfairly made.

Charges (except the second and thirteenth) given at the request of the plaintiffs, when referred to the evidence, are free from error.

When this case was here on a former appeal (93 Ala. 476), on substantially the same evidence, we held that the transaction was a sale by sample, and that the defendants might refuse to receive the flour, if of an inferior quality to the samples. The complaint, as before stated, contains the common counts for goods sold and delivered, and on an account stated, joined with a special count, claiming damages of the purchaser for his refusal to receive and pay for the goods bought.

Charges Nos. 2 and 13, given for the plaintiffs, assert, the one, that "the burden is on the defendants to make good their plea that the flour was not up to samples exhibited by Smith, and the jury can look to the whole evidence in the case in determining whether the defendants have reasonably relieved themselves of that burden;" the other, that "Whatever the defendants set up in defense of plaintiffs' action, the burden is upon them to prove." To the giving of both these charges the defendants excepted.

The precise question here raised was raised and decided in the case of *Merriman v. Chapman,* 32 Conn. 146, where the court say, "If the action had been brought upon the executory contract, for not accepting and paying for the goods, it is apparent that in order to prove his whole case, the plaintiff must show that the goods correspond with the sample, since otherwise it would not appear that his part of the contract had been performed, while on an executed contract, it is only necessary for the plaintiff to prove its execution, and it is then for the defendant to show that the goods were inferior to the quality stipulated for, in order to reduce the price to be paid for them. Here the plaintiff sues upon an executed contract. He may do this, if he can show in point of fact it has been so far executed as to create a debt against the defendant for which *indebitatus assumpsit* will lie, and he can do this in one of two ways; he may show a delivery of the goods, and an acceptance of them by the defendant, either expressly or by retaining them for an unreasonable time, or an appropriation of them to his own use; or he may show an execution of the contract on his part by the delivery of the goods corresponding in quality with the stipulations of the contract." This language is applicable to our case, and we hold, as was held there, that where goods are sold by sample for an agreed price, and are delivered by the vendor at the place where they were to be delivered by the terms of the contract, but the buyer, not having accepted them, on examination within a reasonable time, refused to accept them, on the ground that they did not correspond with the sample, the burden of proof as to whether they correspond with the sample or not, in a suit brought by the vendor for the price or for the difference in price on a re-sale, is on the vendor and not on the vendee.—Miller, Law of Conditional Sales, 93; *Hollender v. Koetter,* 20 Mo. App. 79. The case of *Brigham v. Retelsdorf,* 73 Iowa, 712, cited by appellees, is distinguishable from the one in 32 Conn. *supra,* but if not reconcilable therewith, and asserts a contrary doctrine, it is, in our judgment, erroneous.

[Penn & Montgomery v. Smith, et al.]

It follows that said charge No. 2, given at the instance of the plaintiff, is erroneous. Charge No. 13, intended to assert the same principle, more broadly stated, as applicable to this case, was erroneous.

Charges Nos. 4 and 6, requested by defendants and refused, are but counter-charges to charge No. 2 given for plaintiffs, and ought to have been given.

Charge No. 2 requested by defendant was properly refused. It fails to aver, as a part of the contract, that the samples by which the flour was sold, if compared with that in the store of Penn & Co., should be the same in quality, was calculated to confuse, and is argumentative.

Charges Nos. 3 and 5 were properly refused.

From what we have heretofore said, it will appear that the court committed no error in refusing to allow the witness Smith to be asked, on cross-examination, if he could not have sold the flour to better advantage in Columbus, Ga., or in some other larger market. The law did not require him to sell in any other than the Opelika market, under the evidence given here. The plaintiffs having given notice of their intention to re-sell, the defendants made no request, and gave no instructions as to where the flour should be sold. The sale in bulk, instead of in car-load, was not an illegal disposition of the property.

The exception based on the ruling, that the witness Smith was allowed to testify, that the words "Patent" and "Straight," used to designate the kinds of flour sold, have acquired a "general signification in the commercial world," furnished no ground of exception. The witness was not asked, and did not say, what the general signification was. It was without injury, even if erroneous.

There was no error in permitting the witness Erwin to state, that he advised Smith, as to the best way to dispose of the flour. It was relevant as tending to show the *bona fides* of Smith, in exercising his discretion to re-sell.

Reversed and remanded.