# Montgomery Furniture Co. v. Hardaway *et al.*

*Action of Assumpsit.*

1　*Sale of personal property; when complete.*—A sale of personal property which is in the possession of the seller is complete, and the

[Montgomery Furniture Co. v. Hardaway *et al.*]

title passes to the purchaser, when the parties agree upon the terms of sale, although there is no actual delivery of the property into the possession of the purchaser, and he is not entitled to it until he pays the purchase price therefor.

2. *Same; action of assumpsit maintainable after re-sale.*—Where, in a sale of personal property, it is agreed that the purchase money is to be paid at some future day, and the property delivered to the purchaser is to remain subject to the payment of the purchase price, if, after the stipulated day of payment, the purchaser continues to remain in default in payment of the purchase price, the seller can, after notice to the purchaser, re-take and re-sell the property for account of the purchaser, and after crediting the proceeds of said sale on the original agreed purchase price, can maintain an action of assumpsit against the original purchaser for any balance remaining due thereon.

3. *Action of assumpsit; when maintainable by seller of personal property.*—Where a complaint avers that the plaintiff sold a pair of horses, and delivery was made to the defendant on September 20th, by placing them in a livery stable; that there was an understanding between the parties that the horses were to remain subject to the payment of the purchase price, which was agreed to be paid on October 1st; that on October 1st, plaintiffs demanded payment of the purchase price, and the defendant not having the money at that time, it was agreed that plaintiffs should wait until the following Monday; that on the intervening day one of the horses died, and upon the plaintiffs demanding the purchase price of the two horses on Monday, the deferred day of payment, the defendant refused to pay the sum agreed; that because of the continued failure and refusal of the defendant to pay the purchase price for said horses, the plaintiffs, after notice to the defendant, sold the surviving horse for account of defendant, and credited the proceeds of the sale on the original purchase price; that the plaintiffs now sue to recover the balance due on said purchase price, after deducting the amount for which the living horse was sold. *Held:* That the complaint properly counted in assumpsit, and was not demurrable.

4. *Same; plea of not guilty improper.*—In an action of assumpsit a plea in which the defendant avers that he is "not guilty of the matters alleged in the complaint," is improper.

5. *Evidence; general objection rightly overruled.*—Where, to the introduction of evidence, some portions of which are admissible, a general objection is interposed, specifying no particular grounds, and not being directed to any particular portions of the evidence, such objection is properly overruled.

6. *Agency; authority of agent, general or special.*—The general rule is, that one who deals with an agent is bound to inquire and ascertain the extent of his authority; but in the application of this rule, a distinction is observed between a special agency, which must be strictly pursued, and a general agency which confers authority on the

agent to transact business in the usual and customary mode, and is measured by the scope and character of the business; yet, in either case, private instructions as to the mode of executing the agency, not intended to be communicated to third persons, can not affect the rights of one who deals with an agent, unless he has actual notice thereof, or knowledge of facts sufficient to charge him with constructive notice.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by the appellees, James H. Hardaway and George W. Covington, against the Montgomery Furniture Company, a partnership composed of George Hollander and Ed. Hollander; and was commenced on January 28, 1893. The complaint contained the common counts of assumpsit, and also the following special count: "Plaintiffs claim of the defendant the further sum of two hundred and twenty-two and 50-100 dollars, for that heretofore, to-wit, on the 20th day of September, 1892, plaintiffs sold to defendants one pair of bay horses for the agreed sum of $365, to be paid in the following manner, to-wit, $300 in cash, and for the remaining $65 defendants were to deliver to plaintiffs a mule, which plaintiffs agreed to take at the said sum of $65, and in lieu thereof. That according to the terms of said sale, said horses were delivered on said 20th day of September for and on account of defendants, but with the understanding and agreement by and between plaintiffs and defendants that said horses were to remain subject to the payment of said purchase price, as aforesaid, which was by said agreement to be paid on the 1st day of October following, and that from 20th day of September to said first day of October, plaintiffs were to pay for the keep of said horses, but that said horses, were to be at the risk of defendants, and to remain only subject to plaintiffs' lien for said purchase price. That on said 1st day of October, plaintiffs demanded of defendant said sum of $300, and said mule. That in response to said demand, defendants not paying as aforesaid, it was agreed, then and there, between plaintiffs and defendants, that plaintiffs would give further time, and until the Monday following for the payment of said purchase price, and that the defendants would pay the keep of said horses, however, from said 1st day of October. That on said Monday defendants refused to

pay said purchase price or any part thereof. That plaintiff has paid out a large sum to said Wm. Trimble for the keep of said horses, since said 1st day of October, to-wit, $25, for and on account of defendants. That because of the continued failure and refusal of said defendants to pay said purchase price and said board, or any part thereof, plaintiffs, after due notice to defendants, sold one of the pair of said horses for account of defendants, on to-wit, the 12th day of November, 1892, for the sum of $165, and credited said amount on said keep and purchase price. And plaintiffs aver that defendants failed and refused to pay said purchase price and keep, or any part thereof, and still does refuse to pay the same, and that no part thereof has been paid, excepting said sum of $165, as aforesaid; wherefore plaintiffs sue to recover the balance due on said purchase price and keep, with interest thereon.''

The defendants demurred to the complaint on the following grounds: "1st. That said complaint shows it to be an action in assumpsit for the agreed price. 2d. That said complaint shows that plaintiffs reclaimed possession of said property, and can not maintain an action of assumpsit." This demurrer was overruled, and defendants excepted. The defendants then pleaded: "1. That they did not owe plaintiff anything. 2. That they never purchased, nor contracted for the purchase of a horse, or pair of horses from plaintiffs. 3. That William O. Burks is only a special agent of defendants, for the purpose of selling furniture and of collecting the money thereon, and had no authority to contract any debt for the company without their approval. And that plaintiffs dealt with said Burks. 4. That the said William O. Burks was never authorized to purchase, or to agree to purchase from the said plaintiffs a horse, or a pair of horses for the use of the said Montgomery Furniture Company. And that said plaintiffs dealt with said Burks. 5. That the said plaintiffs never delivered to the defendants any pair of horses. 6. That they are not guilty of the matters alleged in the complaint in said cause. 7. That no title ever passed out of the said plaintiffs in and to the horses alleged to have been sold to defendants. 8. That since that first day of October, 1892, the said plaintiffs have exercised acts of ownership over the said horses in question. 9. That before the

Monday referred to in the complaint, as an extension of time, one of the horses died, and that plaintiffs could not and did not deliver a pair of horses on said day, and, therefore, defendants declined payment. 10. That plaintiffs guaranteed said horses to be in sound bodily condition at the time of the date alleged as a day of delivery, to-wit, October 1, 1892, and defendants allege that one of the horses died on October 2d, and was not of said condition on the 1st day thereof.'' The plaintiffs moved to strike the 5th and 8th pleas from the file, which motion was granted, and the defendant duly excepted. To the 9th plea the plaintiffs demurred on the following grounds : ''1st. Said plea is not responsive to the complaint, and sets forth no fact or facts that are defensive or material to the allegations of said complaint. 2d. That said plea is insufficient in failing to set forth any state of facts showing that delivery was necessary to the passing of the title from plaintiffs to defendants of the pair of horses named in the complaint.'' This demurrer was sustained, and the defendants excepted. To the 3d and 4th pleas the plaintiffs filed the following replication : ''That they did not deal and contract with the said Wm. O. Burks, but they contracted with him as the duly authorized agent of defendants in the premises as far as these plaintiffs were concerned.'' To the 10th plea the plaintiffs replied : That they admit, as alleged in said plea, that they did warrant said horses to be in a sound bodily condition, but they deny, as alleged therein, said horses were not in said condition.

The plaintiffs took issue on the 1, 2, 6 and 7 pleas, and the defendants joined issue on the replication of the plaintiffs to the remaining pleas.

J. H. Hardaway, one of the plaintiffs, testified, that the defendant company was, at the time of the transaction, before that, and at the trial, doing business in Montgomery, under the name of the Montgomery Furniture Company, dealing in furniture ; that they had a large storehouse on Commerce Street in said city, to which customers were invited, and they employed several clerks in the conduct of their business; that W. O. Burks was the agent and manager of said business, and the members composing said company, which was a partnership, resided in Baltimore, Maryland. The witness further stated that he knew the general character and nature of

said business as carried on by the defendants, and that it was usual and customary in carrying on such business to use furniture wagons and horses or mules for the purpose of delivering furniture to their customers; that a short while before the 20th of September, he proposed to said Burks to sell him said horses for the defendants, for the sum of $400, and Burks declined to submit the proposition to his principals in Baltimore at that price, as he thought the price was too high; that a day or two afterwards, witness had another interview with said Burks and submitted to him another proposition, which was to sell the horses for $375, which proposition said Burks also declined to submit to defendants, or "his house," as he expressed it, but made witness a counter proposition, or offer, viz., $300 and a mule then owned by and used in the business of defendants in the city of Montgomery; that witness refused this proposition, but, in a day or two thereafter, and after consulting his partner, witness told Burks he had concluded to accept his offer, to which Burks replied, he would have to submit the matter to "his house" for their approval, and he would write to them at once. This conversation was a day or two before the 10th of September, 1892. Witness further testified, that he did not close any trade with said Burks for the horses, but that his partner, Mr. Covington, made the final agreement with him on or about the 20th September, and reported that he had sold the horses to defendants, but that they, plaintiffs, would have to pay the board of the horses until the 1st of October following, as defendants had no use for the horses until that time; that witness, after the 20th September, met Burks and told him that he had the opportunity to hire out the horses and asked him if he had any objections, and he replied he did not, as he thought light work would benefit them; that, on the 1st of October, witness went to the store of defendants, to collect the purchase money for the horses, it being Saturday morning about 9 o'clock, and he there met Burks, who invited him to the office of the store, and said he would pay him the money, but when they arrived in the office, after looking over his cash book, told the witness that he did not have money enough in his cash drawer to pay him, and that it was against the rules of the house to check out of the bank, and asked witness to wait until the fol-

lowing Monday for his money, as Saturday was his collection day, and he would by that time have money enough on hand. Witness agreed to wait until Monday for his money, but told Burks defendants would have to pay for the board of the horses from Saturday to Monday, which he agreed to pay. Said Burks then asked witness if he would loan him the mule for two days, until he could get his wagon and harness out of the shop, which was then being made to work said horses to. And to this witness assented. On the following Monday morning witness was informed one of the horses was dead. He went to see Burks and asked him what he was going to do about it, and he said he would let witness know later in the day. Witness had several conversations after this with Burks, but could get no satisfaction out of him, and finally Burks referred him to the lawyer of defendants. Not hearing from him for a few days, plaintiffs gave notice in writing, to the defendant company, dated October 10, 1892, that they looked to them for the payment of the price agreed on between them for the horses, and if they would pay plaintiffs $175, or $125 and the mule, and $25 for the keep of the horses (one of the pair having died since the sale) from the the 1st of October to the day of payment, the other horse would be turned over to them, with the understanding that they waived no right to hold them for the balance of the purchase money for the pair of horses ; that if they failed to comply with the above proposition on or before the 12th day of November, they would, as soon thereafter as practicable (having in view the defendants' interest) sell said horse for their, defendants', account under plaintiffs' lien, and after the payment of the keep of said horse, from and including the 1st day of October, out of the proceeds of the sale of said horse, they would credit whatever remained of the proceeds to the account of defendants for the purchase money for the pair of horses, and then, if they did not settle the same, that plaintiffs would commence suit against them for the balance of the purchase money left unpaid. This written notice was introduced in evidence by plaintiffs. The defendants objected to the introduction in evidence of said notice, but stated no grounds for their objection. The objection was overruled, and the defendants duly excepted. Witness further testified, that after giving

this notice, defendants declined to act under it, and plaintiffs, on the 12th of November following, sold said horse for account of defendants, for the sum of $165, and credited the sum on defendants' account, and that this was the best price they could get for the horse.

Mr. Covington, the other plaintiff, testified that he had several interviews with the said Burks before the sale of said horses to defendants ; that on one occasion, Burks stated, that he had written to his house in Baltimore submitting plaintiffs' offer, viz., $300 and the mule, for the horses, and, on the 18th of September, he stated that he had heard from the defendants in response to said offer, and he thought it would be all right, but he would have to let a man see the horses. The next morning, Burks told witness to send the horses around to the defendants' store, and witness did send them, and witness saw the horses at the store. The next day the 19th, or the next, the 20th, Burks told witness that it was all right, and he would take the horses, but that plaintiffs must pay their board until the 1st day of October following, as he did not desire to pay for the feed of three head of stock, including the mule, which it was agreed that defendants should keep for a few days, as he would not need the horses until he had a wagon made. Covington, for plaintiffs, agreed to this, upon the express understanding, that it was a trade, and the horses were defendants' property, the witness stating at the time that he did not wish to put himself in a position where, unless it was a trade, he would have to refuse a better offer, if one should be made for the horses. Burks agreed to this, and replied, "Yes, I agree to that." Covington further testified that he saw at the defendants' store, about the time the trade was made, and before, on one side of the door, in front of the window to the store, a movable sign, with the words, "Montgomery Furniture Company. House Furnishing Goods. Specialties. Trunks, carpets, mattings, rugs, lamps, window shades, &c. All goods sold on easy payments, or cheap for cash. Wm. O. Burks, Manager." Defendants objected to this evidence about the sign, but on what ground is not stated. The court overruled the objection, and defendants excepted.

The witnesses for plaintiffs were each asked, if a wagon and harness had been bought by defendants, and used in their business in the city of Montgomery, a few

days after the 1st of October, 1892; and if, a short while thereafter, defendants had bought another pair of horses which they used to said wagon. Both of them answered in the affirmative. Defendants objected to the question and answer, but on what ground is not stated. Their objection was overruled, and they excepted. The proof shows the board bill of said horses was $22.50, which plaintiffs had paid to Wm. Trimble, who kept the horses, for account of defendants. Neither of said witnesses testified that the horses were to be boarded at Trimble's or at any particular place, but Covington testifies he told Burks, they were at Trimble's, where he could find them at any time.

The evidence shows, without conflict that on the Sunday after the 1st of October and before the Monday following, to which day the time for paying the purchase price for the horses was extended, one of them died, and that defendants refused to pay and carry out the alleged sale and purchase ; and further, that, after due notice to the defendants, the plaintiffs took the remaining horse, and sold it for and on account of the defendants for $165, which sum they credited on their claim of $387.50 against defendants, made up thus : For horses $300.00 ; mule, $65.00 ; board of horses paid to Trimble, $22.50; making $387.50, which sum being credited with $165.00, for which they sold the remaining horse, leaves a balance of $222.50, for which they sue.

One Miller, a veterinary surgeon, was examined as a witness for plaintiffs, and testified, that he made a *post mortem* examination of the horse that died, at the instance of Burks, (the horse having been sold on a warranty of soundness), and Burks paid him $5.00 therefor. To this evidence the defendants objected, but on what ground is not stated. The court overruled the objection, and defendants excepted. One Wagner, a witness for plaintiffs, testified that he sold defendants a double horse furniture wagon some time in September, 1892, which he completed and delivered about the second or third week in October, and that about 20th September, Burks ordered from him a set of double harness. The defendants objected to this evidence, but on what ground is not stated, and the court allowed it to go to the jury, and defendants excepted. It was stated by the witness that he traded with Burks who told him he would submit the

matter to his house in Baltimore, and, afterwards, he informed him that the house assented to the proposition. It was also shown, that said mule was worth from $65 to $75.

Wm. O. Burks testified, in substance, as did the plaintiffs, as respects the sale, except he testified that he told Mr. Covington he would take the horses on the 1st of October, 1892, and that on the morning of the 1st of October, Mr. Hardaway came to his store and asked for the money, but did not bring the horses, nor did he offer to send them around to him; that he told said Hardaway, that he did not have the money then in the drawer, and that if he would wait until Monday, he would take the horses; that Hardaway agreed to do this, if he, witness, would pay their board from then until Monday and witness assented to this; that on Sunday, which was the next day, one of the horses died; and on Monday morning, Hardaway came down to the store and reported that fact, and asked him if he intended to pay for them, when witness told him that he would see him later; and that he afterwards referred him to his attorney. This witness also testified that the trade was to be for cash, and he was not to have them, or the use and control of them, until they were paid for.

He further testified that Mr. Hollander, of defendants' firm, had not been in Montgomery for about a year, and witness was their agent in Montgomery; that he was under a written contract with the firm, wherein his duties, powers and salary were set forth; that by said agreement he was to have the books correctly kept, hire the clerks and pay them, to sell the furniture, collect the money and deposit it in bank in the name of defendants; that he was forbidden to rent a store, or buy anything, furniture or supplies of any kind, or contract any debt in the name of the defendants, without their approval; that he informed plaintiffs that he could not purchase the horses, without the approval of his principals; that he never did write to defendants about the matter and never told either of plaintiffs that he had done so, but he did tell them, he would take the horses, on the 1st of October, 1892; that the horses he bought on the 25th of October were purchased with the approval of his principals, and they knew nothing of the contract or contemplated trade with the plaintiffs until after this suit was

instituted. Edward Hollander, one of defendants, corroborated said Burks as to his powers as agent, and want of authority to contract debts against defendants, without their consent, and stated that Burks was their agent and manager in Montgomery. It was admitted, that said Burks did not tell either of the plaintiffs, that his contract of agency with defendants was in writing.

The defendants requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe from the evidence that the alleged contract was a purchase for cash, and that Burks, as the agent of the Montgomery Furniture Company, was not to have the use of the horses until the purchase price was paid, no title passed until the payment of the money, and the plaintiffs can not recover in this action, and your verdict will be for the defendants." (2.) "Title of chattels sold passes by delivery, and unless the jury believe from the evidence that the horses were delivered to the defendants' company, no title passed to the said defendants in the horses, and plaintiffs can not maintain this action." (3.) "If the jury believe from the evidence that the horses were merely placed in the livery stable of William Trimble by plaintiffs, and without the authority of the defendants, and that there was no agreement between the defendants and the plaintiffs that they were to be delivered at said stable, then there was no delivery and passing of title to defendants that will sustain this action, and your verdict must be for the defendants." (4.) "If the jury believe from the evidence that the horses were never delivered to the defendants' company, and consequently that no title passed, but that Messrs. Hardaway & Covington retained possession, direction, control and disposition of said horses, then you must find for defendants." (5.) "Title to chattels, such as horses and other personal property which are to be delivered in the future, does not pass by the contract, and unless the jury believe from the evidence that the title in these horses passed to the defendant company at the time alleged in the complaint, the issue must be solved in favor of the defendants." (11.) "If the jury believe that Burks' authority and contract was in writing, and that the plaintiffs knew that Burks was an agent, then they were chargeable with notice of the

terms of the writing and agency, and if such written authority limited or forbade purchases by the said Burks, plaintiffs were, also, chargeable with notice of that fact, and if they contracted with Burks, as an agent, for the sale of the horses, and without the defendants' consent, approval and knowledge, then they dealt at their own peril, the defendants are not liable thereon, or therefor, and your verdict must be for the defendants." (15.) "A variance between the matters alleged in the complaint and the matters proved is fatal to the cause of the plaintiffs; and if the jury find that there was a variance in this cause, their verdict must be for the defendants." (17.) "If the complaint alleges that the contract between Burks, as agent, and the plaintiffs was that the horses were to be delivered at the stable of William Trimble, and the proof fails to show this to be the fact and agreement, the variance is fatal to the plaintiffs' right of recovery, and the verdict must be for the defendants." (19.) "That Burks is not the defendant, and his alleged inconsistent acts or statements were not necessary of any explanation, either by himself, or counsel, and can not affect, or prejudice the defendants, unless done at their request and authority. The sole question for the jury as to agency is, whether or not Burks had authority to make the contract. If he did not, your verdict must be for the defendants."

There were verdict and judgment for plaintiffs, and defendants appeal. The several ruling of the trial court upon the pleadings and the evidence, and the refusal to give the charges requested by defendants are assigned as error.

JOHN W. A. SANFORD, JR., for appellants.—1. The court erred in overruling the demurrer to the complaint. *Shines v. Steiner*, 76 Ala. 458. The sale was not complete, and unless there was a delivery and a consequent passing of title out of the vendor, an action of assumpsit could not be maintained.—1 Benj. on Sales, §§ 308, 325, 366, 377.

2. The court erred in its rulings upon the evidence, in reference to the agency of Burks.—*Cummins v. Beaumont*, 68 Ala. 204; *Wheeler v. McGuire*, 86 Ala. 398; *Belisle v. Clark*, 49 Ala. 98; *Fisher v. Campbell*, 9 Port. 210.

3. The alleged contract between Burks and plaintiffs being clearly violative of the terms of the agency, not within the scope of his authority, and being further violative of express instructions set forth in the written instrument creating the agency, the principals could not be bound by it. Therefore, the affirmative charge asked by defendants was improperly refused by the court. Where authority is express, the limits and restrictions are conclusive upon parties who have knowledge of them. Where the authority is particular, the party must pursue it. If the agent varied from it, he departs from his authority and what he does is void.—Mechem on Agency, § 273 ; Ewells Evans on Agency, pp. 235–6 ; *Belisle v. Clark*, 49 Ala. 98 ; *Fisher v. Campbell*, 9 Port. 210 ; *Cummins v. Beaumont*, 68 Ala. 204 ; *Wheeler v. McGuire*, 86 Ala. 398.

4. In sales for cash on delivery of personal property, payment and delivery are concurrent acts, and the title does not pass to the vendee till payment of the purchase money. The court erred in refusing to give the charges requested by defendants.—*Harmon v. Goetter*, 87 Ala. 325 ; *Shines v. Steiner*, 76 Ala. 458 ; *Cummins v. Beaumont*, 68 Ala. 204; *Wheeler v. McGuire*, 86 Ala. 398 ; 1 Benjamin on Sales, § 366.

JOHN G. WINTER, *contra.*—1. The sale of the horses by the plaintiffs to the defendants was complete.—*Pilgreen v. State*, 71 Ala. 370 ; *Robinson v. Pogue*, 86 Ala. 257 ; *Foley v. Felrath*, 98 Ala. 176 ; *McCrae v. Young*, 43 Ala. 622 ; *Shealy v. Edwards*, 73 Ala. 175 ; *Jones v. Brewer*, 79 Ala. 545 ; *Greene v. Lewis*, 85 Ala. 221 ; *Mobile Sav. Bank v. Fry*, 69 Ala. 348 ; *Fry v. Mobile Sav. Bank*, 75 Ala. 473 ; *Lucas v. Pittman*, 94 Ala. 616 ; *Cleveland v. Williams*, 94 Amer. Dec. 274.

2. Where property is sold and the seller retains possession for the payment of the purchase money, he has the right, on refusal to pay, to sell for account of the purchaser, and to sue for the balance due. This is termed " resale for account."—2 Benj. on Sales, 1013, § 1165, note 3.; §§ 1019–1020, note 5 ; *West v. Cunningham*, 9 Port. 104 ; *Thomason v. Dill*, 30 Ala. 444 ; *Penn v. Smith*, 98 Ala. 560.

3. " A general agent may exceed his express authority, and the principal may nevertheless be bound. The

[Montgomery Furniture Co. v. Hardaway *et al.*]

scope and character of the business which he is empow-
ered to transact, is, as to third persons, the extent and
measure of his authority." And in special agencies,
even, "The power to do everything necessary to its ac-
complishment may be included in a particular agency,
so that private instructions as to the particular mode of
execution, which are not intended to be communicated,
will not be regarded as limitations of his power."—
*Wheeler v. McGuire*, 86 Ala. 402. It is the apparent au-
thority with which the agent is clothed, and not his real
authority, which controls in his dealings with third per-
sons.—1 Amer. & Eng. Encyc. of Law, pp. 341, 345,
347, 348, 350; *Louisville Coffin Co. v. Stokes*, 78 Ala. 373;
*Reynolds v. Collins*, 78 Ala. 97; *Tenn. Trans. Co. v. Kava-
naugh Bros.*, 101 Ala. 1; Mechem on Agency, § 283.
When agency is otherwise established, acts and declara-
tions as to his powers, &c., in the line of his agency, and
in the performance thereof are relevant testimony.—*Un.
Mut. L. Ins. Co. v. Slee*, 110 Ill. 35; *Thomas v. Wells*,
140 Mass. 517; *Casey v. Suter*, 36 Md. 1; 1 Amer. &
Eng. Encyc. of Law, 351; *Gibson v. Hardware Co.*, 94
Ala. 346.

HARALSON, J.—1. There was no error in overruling
the demurrer to the complaint. On the facts stated
therein, assumpsit was the proper remedy. Nor was
there error in striking out plea No. 5. It was not neces-
sary for the horses to have been delivered to defendants,
for them to have become bound to pay for them.—
*Darnell v. Griffin*, 46 Ala. 520; *Pilgreen v. The State*,
71 Ala. 368; *Blackshear v. Burke*, 74 Ala. 239. Besides,
the defense here intended to be set up, was available un-
der the general issue, already pleaded. The 6th is an
improper plea in this form of action; and the exception
reserved to the ruling on the 8th is not insisted on.
2. It has been held, that a vendor has no right to re-
scind a sale, when a buyer is in default for the payment
of the price; that when the goods have reached the act-
ual possession of the buyer, the vendor's sole remedy is
by personal action; that he is in the position of any other
creditor, to whom the buyer owes a debt, having no
special remedy in his favor as a vendor.—2 Benj. on
Sales, §§ 1125, 1156. In the case at bar, the complaint
alleges, as we have seen, that the horses were

delivered on the 20th of September, for and on account of defendants (at the stable of Wm. Trimble as is shown) to be paid for on the 1st of October, to be at the risk of the buyers, but to remain subject to the purchase price, and the evidence of the plaintiffs tended to establish these averments. That of defendants tended to show, that there was no complete agreement of sale, and nothing more than a negotiation looking to one, but that they would take and pay for the horses on the 1st of October. If the evidence of the plaintiffs is to be believed, the defendants were liable in assumpsit for the purchase price of the horses, and the plaintiffs had the right to re-take and sell the remaining horse for and on their account.—Benj. on Sales, §§ 334, 1125, 1156, 1165.

A resale by the plaintiffs under these circumstances—the purchaser continuing in default—did not authorize him to resist paying any balance still due on the purchase price.—2 Benj. on Sales, § 1156; Blackburn on Sales, 325.

The paper writing of date October 10, 1892, offered in evidence by plaintiffs, among other things it contained, gave notice to defendants that if they did not comply with the terms of their contract of sale, by a certain date, the plaintiffs would have to sell the remaining horse for and on their account. The objection interposed to this document as evidence, was general, specifying no grounds. This objection might have been overruled on that account alone. There were parts of the writing the court might have excluded if specific and proper objection had been interposed; but, it was certainly competent to the extent that it gave notice to defendants of a purpose of the plaintiffs, after a specified date, to sell the horse on their account, if by that time they did not comply with the terms of said sale.—2 Benj. on Sales, §§ 1022, 1023; *Smith v. Penn*, 98 Ala. 560.

3. There was no error in allowing the plaintiffs to prove what was on the sign at defendants' store in Montgomery; in allowing plaintiffs' witness to testify that defendants had purchased a wagon and a pair of horses, since October 1, 1892, and in refusing to exclude this testimony; in permitting the witness, Miller, to testify that he had made a *post mortem* examination of the dead horse, for which Burks, defendants' agent, paid him

$5.00; and in allowing the witness, Wagner, to testify that he sold defendants a double horse wagon and a set of double horse harness, about the 20th September, 1892. The objections raised, in each instance, to the introduction of this evidence, were general, not specifying any grounds of objection, and the evidence, if at all irrelevant, was not patently so. The court was justified in overruling such objections.—*Espalla v. Richard & Sons*, 94 Ala. 159.

4. The principal of a special agent, is only bound by acts of the agent which are in accordance with his authority, and a third party is bound at his peril to ascertain the extent of the agent's authority.—3 Brick. Dig. 22, § 54; 1 Amer. & Eng. Encyc. of Law, 252. But, a very important distinction is made, and must always be observed, in the application of this rule, between *special* and *general* agents. This court has carefully drawn this distinction. As was said in *Wheeler v. McGuire*, 86 Ala. 402, and before and since held to the same effect, "A general agent may exceed his express authority and the principal nevertheless be bound. The scope and character of the business, which he is empowered to transact, is, as to third persons, the extent and measure of his authority. * * * * When the general agent transacts the business intrusted to him, within the usual and ordinary scope of such business, he acts within the extent of his authority; the principal is bound, provided the party dealing with the agent acts in good faith, and is not guilty of negligence which proximately contributes to the loss." The agent's authority as to third persons, is what it appears to be, and must be determined by the nature of his business and is *prima facie* coextensive with the requirements.—*Louisville Coffin Co. v. Stokes*, 78 Ala. 372; *Gibson v. Snow Hardware Co.*, 94 Ala. 346; Mechem on Agency, §§ 283-287; May on Insurance, §§ 126, 143, 144.

5. Of charges asked by defendants and refused, the one numbered 1 asserts an incorrect proposition of law, and under the evidence was calculated to mislead and confuse the jury.—*Pilgreen v. The State*, 71 Ala. 368.

Those numbered 2, 3, 4, 5, 15, 19 were properly refused; the 2d, 3d, and 5th, asserting incorrect principles; the 4th, argumentative and otherwise illegal; and the 15th and 19th, vague, argumentative and misleading.

No. 11 incorrectly postulates that one dealing with a general agent is bound to know his private instructions from his principal, and is forbidden to act on what appears to be his authority, from the scope, extent and nature of the business he was employed to transact; and, besides, it does not predicate the instruction asked on a violation by the agent of the instructions of his principal. It was properly refused.

We find no error in the record, and the procedure of the court below is affirmed.