LADD et al. v. ÆTNA INDEMNITY CO.

(Circuit Court, D. Oregon. February 9, 1904.)

No. 2,763.

1. PRINCIPAL AND AGENT—AUTHORITY OF AGENT TO BORROW MONEY.
    The power of an agent to borrow money on behalf of his principal does not depend upon whether or not he is a general agent, but, although not a general agent, such authority may be conferred, by implication, from the scope and character of the business he is empowered to transact.

2. SAME—QUESTION FOR JURY.
    Defendant executed bonds of indemnity to secure the performance by a shipbuilding company of contracts for the construction of certain vessels, the contracts providing that in case of default by the company it should turn over its works to defendant, to enable it for its own protection

to complete the contracts. When the vessels were partially completed, the company abandoned the work and turned its plant over to defendant's agents, who had executed the bonds in its behalf. The evidence tended to show that such action was with defendant's knowledge, and that the agents proceeded with the work, and, being without sufficient money to carry on the same, they borrowed money from plaintiffs, giving a bond therefor in the name of defendant, and using the money so borrowed in carrying on the work. *Held*, that whether or not the evidence established a state of facts which conferred power on the agents, by implication, to borrow the money, was a question for the jury, and that a verdict for plaintiffs would not be disturbed.

At Law. On motion for new trial.

Williams, Wood & Linthicum and W. C. Bristol, for plaintiffs.
Campbell & Powell and Frederick V. Holman, for defendant.

BELLINGER, District Judge. This action grows out of certain contracts of indemnity entered into by the defendant to secure three shipbuilding contracts of the Hardy Shipbuilding Company, of the state of Washington. One of these contracts was for the construction of a steam passenger boat for one Horn, the second was with the Pacific Cold Storage Company for the construction of a barge, and the third was with the firm of Sudden & Christensen for the construction of a four-topmasted barkentine. The three bonds of indemnity were in the sums respectively of $10,000, $2,000, and $15,000. It was a condition of each of said bonds that, in the event of a default by the Hardy Shipbuilding Company, that company would turn over its plant to the defendant, to the end that the defendant might for its own protection prosecute the contract to completion. The shipbuilding company entered on the work contracted for, and proceeded with the same until about May 15, 1902, when, being without the means or credit to continue the work, it defaulted in its contracts. Thereupon it delivered possession of its plant to the defendant, represented by Clemens & O'Bryan, its general agents, in order to enable the latter to complete the work for which it was liable on its indemnity agreements. In the prosecution of this work it became necessary to use a large amount of money, and the agents, being otherwise without resources, borrowed this money from the plaintiffs to the amount of $9,500. In order to secure this advance, the agents executed a bond, as for the defendant, by themselves as agents, to the plaintiffs, in the sum of $10,000. They also gave their individual promissory notes for the money so advanced. The defendant denied the authority of the agents to borrow this money, and refused to pay the same; whereupon this action was brought. The jury returned a verdict for the amount claimed, with interest. The defendant now moves to set this verdict aside, and for a new trial.

In support of the motion it is contended, among other things, that the court erred in instructing the jury that a general agent is one empowered to transact all his principal's business. But, as to this, it is immaterial whether a general agent is one authorized to transact all the principal's business, or all or less than all his particular business, in a particular place or of a particular kind. The authority of the agent in this case to borrow the money in question does not depend on defini-

tions. The extent of the agent's authority is not determined from the name used to designate the agency. That must be ascertained from the scope and character of the business which the agent is empowered to transact. Montgomery v. Furniture Co., 104 Ala. 100, 16 South. 29. There seems to be no very well defined distinction between the powers of general agents, local agents, and subagents, and therefore they may become in any case a question of fact for the jury. May on Insurance, § 126. If the authority in this case to borrow money existed, it was a necessary implication from the authority formally conferred and from the circumstances of the case. The contention in this case is that the power to borrow money must be conferred in express terms; but there is no reason why this authority should be distinguished from that, implied from the circumstances of the case, to perform any other act necessary to the conduct of the business in the agents' hands. There is no doubt that it was the policy of the defendant, in case of default on the part of contractors for whom it stood as surety, to complete the contracts guarantied. The agents in this case were particularly reminded of this fact by the secretary of the company, who, under date of March 6, 1902, says:

"When executing bonds of this character you must always bear in mind that the surety company signing such a bond becomes a co-contractor, and in the event the contractor defaults on any part of the work, the company must step in and complete it or else stand the loss; which loss is represented by the difference between the contract price and the cost of actually completing the work."

This work necessarily involved the expenditure of money. It is not to be presumed that the defendant intended to complete only what may be termed "solvent" contracts. Ordinarily, such contracts would not require the intervention of the surety company; they would take care of themselves; but, in any event, the completion of a defaulted contract necessarily involved pecuniary risks. Such work could not be carried on without incurring obligations to pay the wages of employés and the cost of materials; and it can make no difference whether the indemnity company's obligation is for materials and wages, or for money with which to pay for materials and wages. If the use of the defendant's credit was practically indispensable to the accomplishment of this object of the agency, the authority to pledge it is implied. "The principle is elementary that, whenever a power to do an act for the principal is given by one person to another, that everything necessary to make the execution of the power effectual to attain the end in view is impliedly conferred." Benninghoff v. Insurance Co., 93 N. Y. 505.

It is contended, further, that the court erred in refusing to give an instruction requested by the defendant, which was in fact given, but with a qualification added by the court. The instruction is as follows:

"I charge you that third parties dealing with an agent are put upon their guard by the very fact, and must do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the powers before them, and must at their peril observe that the act done by the agent is legally identical with the act authorized by the power. Therefore, if Ladd & Tilton, the plaintiffs, loaned the ninety-five hundred dollars ($9,500.00) sued for in this action, or any part thereof, to Clemens & O'Bryan, as agents for the defendant, and if you find that Clemens & O'Bryan did not

have authority to borrow money for the defendant, then your verdict must be for the defendant."

The court supplemented this instruction with the following:

"It was the duty of Clemens & O'Bryan to protect the interest, so far as they were able, of the defendant company. Whether, in the discharge of this duty, they were warranted in borrowing the money, for the recovery of which this action is brought, in order to prevent default on a contract guarantied by the company, and thus save the company from liability, is a question submitted to you."

I assume that the defendant's objection to this qualification of the instruction is not because of the statement therein that it was the duty of the agents to protect the interests of the defendant so far as they were able, but to the fact that the court, instead of determining the question of the agents' authority for itself, submitted that question to the jury. And this is, after all, the question upon which the case turns. Is it necessary that the authority to borrow money should be expressly conferred; or can it be implied from the circumstances of the case; and if the latter, do the facts in evidence warrant the implication of such authority?

The testimony in the case, as already appears, tended to show that, in guarantying the contracts of the Hardy Shipbuilding Company, the defendant became a co-contractor with that company, with the right, in the event of a default by the contractor, to step in and complete the work which it guarantied. The right thus secured was for the protection of the insurance company. It was within the contemplation of the agreement of indemnity that the defendant would, in such event, undertake the completion of the contracts which it had guarantied; and the testimony tended further to show that, in assuming such work and in carrying it on, Clemens & O'Bryan would act as the representatives of the indemnity company. When the shipbuilding company defaulted on its contracts, Clemens & O'Bryan, acting in defendant's behalf, took possession of the plant of the shipbuilding company, and proceeded with the work for which their principal was responsible. The testimony tends to show that the acts of Clemens & O'Bryan in taking possession of the shipbuilding plant for such purpose were known to the defendant; that it intervened in a suit between other parties to obtain possession of said plant, in virtue of the acts of its said agents. The testimony tends to show that, in the carrying on of the work so assumed for the defendant by its said agents, it became necessary to borrow the money for the recovery of which this action is brought; that the money was borrowed in good faith, and was used in the carrying on of the work so assumed; and that one of the contracts—that for the construction of the barge—was in fact completed by this means. Upon these facts, the question of the agents' authority to borrow money was properly submitted to the jury. And, if it was, there was no error in respect to the instructions given or those refused. The Supreme Court of the state of Washington, upon a full consideration of the questions involved in a case against this defendant, arising on a similar bond executed by one of these agents, held that the agent was acting within the scope of his authority in the execution of the bond. Pacific Natl. Bank v. Ætna Indemnity Co., 74 Pac. 590. That case

decides the identical question involved in this case—that Clemens was authorized to borrow money to complete the defaulted contracts of the Hardy Shipbuilding Company, for which this defendant was liable on its bond of indemnity.

The motion for a new trial is denied.